13  483
180  156
13  483
193  481
13      483
27 SC  236

# Earl's Appeal.

An execution issued for the purpose of lien and not to make the money according to law, will not be available against subsequent executions.

Where an execution was issued more than a month before the return day, and levied on certain enumerated articles, "and all the rest of defendant's goods and chattels," and no further proceedings on the execution took place for two months, no inventory being returned, the defendant being permitted to carry on his business as usual, selling some of the goods and acquiring others, and no direction given to the sheriff to proceed and sell. The execution was postponed in favor of subsequent executions. Such delay will defeat the execution, whether owing to the direction or permission of the plaintiff, or to the default of the officer.

The officer, in justice to the defendant, the plaintiff and subsequent execution creditors, should make a *schedule* of the property levied upon. He is not bound to exactness, but the levy or schedule should be sufficiently descriptive to denote the property levied upon, and to give notice to subsequent execution creditors.

APPEAL from the decree of the Common Pleas of Berks county, for distribution of the proceeds of sale of personal property of Pawly. At the time the executions issued, Pawly was engaged in the stove business, and in the manufacture of tin and copper ware, door-locks, and in the sale of gas fixtures in Reading. Shenfelder held a judgment against Pawley, entered Feb. 27, 1849, payable on the next day, entered for $1,500 with stay till day of payment. *Fi. fa.* issued Feb. 28th, 1849, to April T. 1849, No. 41. This execution went into the sheriff's hands on the same day. About a week after receiving the execution the sheriff made a levy in the following manner: He took an inventory of some of the goods. A list was handed to the sheriff by Mr. Pawly, who levied upon the articles mentioned therein, adding " *and all the rest of defendant's goods and chattels.*" The sheriff was not in the view of all the goods and chattels at the time he made the levy, some of them he saw, others he did not see. Pawly made use of several rooms as workshops and ware-rooms, and also a barn or stable at some distance from his front shop, in which latter place his wares were deposited for sale, with the exception of a number of stoves, &c., which were in said stable. Into some of these rooms the sheriff went at the time he made the levy, into others, including the barn, he did not go.

The goods levied upon in this manner remained in the hands of Morris Pawly, the defendant in the execution, who carried on his business which was large, as usual; buying goods and materials in Philadelphia and elsewhere, making up materials into articles fit for sale, and selling; the whole stock remaining pretty much the same in value until the next execution issued. It seems from the evidence that Shenfelder gave no instructions to the sheriff, either as to selling the goods, or as to delaying or postponing the sale of the same. He was frequently in the shop and about the

premises during the time the execution was in the hands of the sheriff. On the 2d June, 1849, the next execution issued, being that of J. S. Richards for use, &c., and went into the sheriff's hands on the same day. The levy upon this execution was made much in the same manner as that upon Shenfelder's, excepting that the sheriff did not go into as many of the different rooms, or shops, and no inventory of any kind was taken. The sheriff levied on "all goods and chattels not subject to prior executions." On the 12th June, 1849, the execution of E. W. Earl issued, and went into the sheriff's hands on the same day; upon the receipt of this latter execution, the sheriff closed up the concern, advertised and made sale in due course of time. The sale was held on June 27th, 28th, and 29th, a small lot on July 16.

On the 14th June, a *fi. fa.* in favor of Boas was issued—returned, levied on goods and chattels of defendant, and subject to prior executions and sold, as per return annexed to 41, April T. 1849. The three last executions were to August T. 1849.

It was alleged that the execution of Richards was discharged by a note, which he received from A. Boas, for the amount of his execution, a short time after it was issued. Richards afterwards said his debt was paid but not the costs. The note of Boas was not paid, and the court, in their opinion in relation to this execution, observe that the question seemed "to turn upon the point, whether Mr. Richards took the note of Boas as collateral security, or as payment and satisfaction of the execution?"

The court ordered distribution in favor of the execution of Shenfelder and of Richards, and the balance on account of the execution of Earl.

Appeals were taken by Earl and Boas.

It was assigned for error on the part of Earl, that

1. The court erred in assigning any part of the fund in court to Shenfelder—

2. Or, to Jno. S. Richards.

3. In deciding that the pretended levy on Shenfelder's execution was a valid levy—or that the lien of it continued, under the circumstances, until the issuing of Earl's execution.

4. The court erred in not decreeing to E. W. Earl the full amount of his execution against Pawly.

Errors were also assigned on the part of Boas, as to any part of the fund having been assigned to Shenfelder.

The case was argued by *N. D. Strong* for Earl, *D. W. O'Brien* for Boas and Richards, *J. Banks* for Richards, and *H. W. Smith* for Shenfelder.

[Earl's Appeal.]

The opinion of the court was delivered by

COULTER, J.—Directness and plainness in the conduct of business affairs contributes much to the certainty and fairness of their adjustment; whilst complication and unnecessary interweaving of one transaction with another does greatly embarrass the judicial application of statutory and just principles to each. If the leading features of the act of 1836, concerning executions, were fully carried out regardless of former and sometimes conflicting decisions in relation to the law and priority of levies on personal property, the duties of sheriffs and the rights of parties with regard to conflicting executions would be disentangled, and much litigation and difficulty avoided. Every execution of *fi. fa.* would then stand alone, and on its own merits, neither bearing upon nor influenced by the conduct of the sheriff, in regard to another. Each execution creditor ought to look to the officer for a faithful execution of his process, according to the terms of his writ and the statute; and if he proceeded not according to those terms, then he should look to him alone. But if instead of that he choose to depart from the law either by permissive, collusive assent, or positive direction, so as to obstruct and hinder a subsequent execution in the hands of the sheriff, he ought to be postponed. There is no doubt but that a *fi. fa.* binds all the defendant's personal property in the bailiwick, from the time it is put into the sheriff's hands. Yet the object of the law is not to secure a continuing lien in favor of the execution creditor, but to enable him to obstruct fraudulent transfers by the debtor, and to secure his debt by a levy and sale of property, fraudulently or illegally transferred to defeat the execution. This court has often asserted the principle that a prior execution would be postponed to a subsequent one, if the former was put into the hands of the officer for the purpose of lien and not for the *bona fide* purpose of making the money according to law. It seems to me that such a levy as that of the prior execution, in this case to wit, Shenfelder's, if finally validated, would enable parties collusively to cover property in evasion of the statute and that class of decisions to which I have referred. The levy was upon certain articles and *all the rest of defendant's goods and chattels*. This *fi. fa.* was issued on the 28th February, 1849, returnable to April term, of same year, and remained in the sheriff's pocket or his drawer with its levy until June, when by stress of other executions returnable to August term, on all of which he endorsed the same levy as on Shenfelder's, and on each subject to prior executions, he was forced to sell. Here was no notice to other creditors of the levy on Shenfelder's *fi. fa.* even in gross. If they saw a record of its being issued, and no return, they might well suppose it was abandoned, lost or paid.

Now, although the sheriff in his testimony says, that Shenfelder did not tell him to stay proceedings, that he never said any

thing to him about his execution; he did it therefore out of his own head, and thereby made himself liable to Shenfelder. But what is it to subsequent execution creditors as it regards their rights, whether this concealed covering of property is effected by direction of the plaintiff, or the wilfulness of the sheriff. If by the latter the plaintiff has his remedy against him for not proceeding, to sell according to the exigency of his writ, and therefore suffers no loss. But we cannot shut our eyes to the fact that Shenfelder's execution was suffered by him to run over its return day, more than two months, and that for the whole period of five months during which it was in the sheriff's hands, Shenfelder saw the defendant proceeding with his business as usual in his shop, selling the very articles that would have been bound by his execution, and often was there, and never said anything to the sheriff, as he says, until the sale was about being made, and then inquired if his execution was not the first. This gives a clue to the whole transaction. Actions sometimes speak as loud and as intelligibly as words. The sheriff says in his testimony, as an excuse for not selling before the return day, of Shenfelder's *fi. fa.*, that Pawley requested him not to do it, and told him that Shenfelder did not want to break him up. The silent acquiescence of Shenfelder, his permissive and collusive approbation of the sale by Pawley of the very articles bound by his execution, whilst others were acquired after the return day, which were not legally bound, give a solution of the main point in the case, and satisfactorily establish that his object was lien, and that he did not put his execution into the hands of the sheriff, with a *bona fide* intent that he should proceed, and make the money according to law. But the 41st sec. of the act of 16th June, 1836, provides, that the officer to whom the writ is directed *shall*, if the defendant neglect or refuse to pay the debt and costs, proceed to levy and sell *so much* of the defendant's personal estate as shall be sufficient for that purpose, and make return of his proceedings to the court according to the command of his writ. Here are plain directions easily followed, and we are not to presume that the sheriff departed from them without other instructions, impliedly if not positively given in the face of the facts of this case. The direction is not that the officer shall levy on all the defendant's personal estate, but only on so much as will satisfy the debt and costs. He would not of course be bound to fractional exactness, but would be entitled to a liberal latitude. But still he ought to make a schedule in justice to the defendant, the plaintiff, and subsequent execution creditors. The officer has another duty to perform after levy, and that is to sell, after six days public notice. If the plaintiff does not want his money, made he need not issue his execution. If he merely wants a lien, and to exclude other creditors, the law interdicts him.— And that which the plaintiff cannot lawfully do in this respect, the

[Earl's Appeal.]

officer cannot lawfully do of his own head. The law ought to govern when its provisions are so plain and direct, because that is made with a due regard to the rights of all, and it is seldom elongated or abridged, without infringing upon the rights of some, and perhaps the most meritorious of the parties. A sheriff who made a schedule, would evince thereby that he had the goods in his vision and power, and would give notice to subsequent execution creditors. But such a levy as this might be made by the sheriff or his officer, and is therefore of dangerous precedent. There are cases where every article could not and need not be specified, on account of their variety and minuteness, such as a store; but then the levy would be on the bulk, and sufficiently descriptive in that, because it would describe the thing. We cannot give precedence to Shenfelder's execution under all the circumstances of the case, but think it ought to be postponed. The decree and distribution of the court below is reversed, and it is ordered that the money be distributed according to the report of the commissioner, as follows, to wit:

| | | |
|---|---:|---:|
| Amount in the hands of sheriff, | | $1897 97 |
| From which deduct commissioner's charge, | $30 00 | |
| " Prothonotary for list of judgments, | 1 50 | |
| Do copy of app't. | 34 | |
| | | 31 84 |

| | | |
|---|---:|---:|
| Amount to be distributed, | | $1866 13 |

This sum of $1866 13, in the hands of the sheriff to be distributed in the following manner :—

1. To Asaph Shenfelder, for rent, from the 1st day of January 1849, to the 2d June, 1849, the date of levy on J. S. Richards' execution, $94 37½.

2. To John S. Richards, on the execution J. S. Richards *vs.* Morris Pawly, *fi. fa.* to August T. 1849, No. 65.

| | | |
|---|---:|---:|
| Debt, | $329 30 | |
| Int. from May 16, 1849, to June 27, | | |
| 1849, day of sale, | 2 31 | |
| | $331 61 | |

3. To Edmund W. Earl, on execution E. W. Earl *vs.* Morris Pawly, *fi. fa.* to August T. 1849, No. 77,

| | | |
|---|---:|---:|
| balance of debt, | $1300 00 | |
| Int. from May 9, 1849, to June 27, '49, | 10 40 | |
| | $1310 40 | |

4. To Augustus Boas, on execution Augustus Boas *vs.* Morris Pawly, *fi. fa.* to August term, 1849, No. 80. The balance remaining in hands of sheriff after payment of the above, to wit, the sum of $129 74½.