# Freeburger's Appeal.

*Lien of prior Execution, when postponed to subsequent one by conduct of Plaintiff.*

1. If an execution be issued, not for the enforcement of the judgment by levy and sale, but for the purpose of a lien, and to acquire security for the debt, it will be postponed to a subsequent execution issued in good faith.

2. Where the plaintiffs in the prior execution alleged that they had given orders to the sheriff to proceed and sell before the second execution came into his hands, they must prove the fact affirmatively, or their execution will lose its priority.

3. Where one of the plaintiffs and his attorney instructed the sheriff, when the execution was placed in his hands, "not to proceed until further orders;" afterwards, that he "should make a levy, but not sell;" and subsequently, by arrangement, permitted the debtor to have access to the property levied, giving him the keys of the shop, it is sufficient evidence that their execution was not issued to collect the judgment-debt, but for another purpose, which was not legitimate nor protected by the law.

Appeal from the Common Pleas of *Union county*.

This was an appeal from the decree of the Common Pleas distributing the proceeds of the sheriff's sale of the personal property of Freeburger & Brother.

The case was this: Cameron & Billmeyer held a judgment against G. W. Freeburger for $300, entered July 15th 1859 to May Term 1859, conditioned to be void if Freeburger would pay at maturity, a note dated July 13th 1859, drawn by G. W. Freeburger & Brother, and endorsed by Billmeyer, payable at the Lewisburg Bank sixty days after date thereof.

On the 15th of July 1859, they ordered execution, which was placed in the hands of the sheriff same day at nine o'clock A. M.

On the 18th of August 1859, Peter Freeburger obtained judgment against G. W. and W. E. Freeburger, and on the same day ordered an execution, which was placed in the hands of the sheriff at half-past seven o'clock P. M.

Under these executions the sheriff sold the personal property of defendants for $110.88, which was claimed by the plaintiffs in both executions. The money was therefore ruled into court, and a feigned issue, in which William Cameron and Philip Billmeyer were plaintiffs, and Peter Freeburger defendant, was directed by the court, to try the validity of the judgment in favour of Peter Freeburger, and whether the same was given to defraud Cameron & Billmeyer.

To a declaration in the usual form on a wager, the defendant pleaded that the judgment of Peter Freeburger against William E. Freeburger and George W. Freeburger, was valid and given for money due and owing by and from the said William E. Freeburger and George W. Freeburger, and was not given, nor were the

proceedings had thereon for the purpose of delaying, hindering, defrauding, and preventing the said plaintiffs, William Cameron and Philip Billmeyer, from the recovery of their debt, in manner and form as the said plaintiffs had in that behalf alleged, &c.; and further, that the plaintiffs had stayed their execution before the defendant's *fi. fa.* issued, by which the plaintiffs lost their lien.

On the trial, the sheriff, John Crosgrove, was called as a witness, who testified that when the execution of Cameron & Billmeyer was placed in his hands, he was ordered by the plaintiffs or their attorney, "*not to proceed on the writ until further orders.*" That some eight or ten days afterwards, Billmeyer informed him that the defendant was removing property out of the shop, and directed him to "take charge of the balance" and "make a levy but not sell;" whereupon he made a levy and closed up the shop; that subsequently, Freeburger claimed the benefit of the exemption law, which was allowed, and the balance of the property locked up. After which, an arrangement was made between Billmeyer and Freeburger, under which the latter was allowed to work in the shop, but not to have access to or use any of the property levied on without an arrangement with Billmeyer or the witness, and that all the property thus left was sold by him under both writs. He also testified, that about the time the second execution came into his hands, Billmeyer gave him orders to "go on with his execution;" but he added, "Billmeyer never told me to stay the writ." "About the time, or on the day the second execution came into my hands, Billmeyer told me to sell," &c.

There was a verdict on the issue, sustaining the judgment of Peter Freeburger. The counsel for Messrs. Cameron & Billmeyer then applied to the court for an auditor to take testimony and make distribution of the fund in court, which was resisted by the counsel for Freeburger. The court below refused to appoint an auditor, but directed the proceeds of sale to be applied to the claim of Cameron & Billmeyer, and entered judgment against them for the legal costs of the feigned issue.

The case was then removed into this court by Peter Freeburger, by whom the distribution made by the court below was assigned for error.

*J. F. & J. M. Linn*, for appellant, argued that, as the execution of Cameron & Billmeyer was placed in the sheriff's hands for the mere purpose of a lien, and not to make the money according to law, it was not available against subsequent executions: citing Earl's Appeal, 1 Harris 483; Weir *v.* Hale, 3 W. & S. 285; Cowden *v.* Brady, 8 S. & R. 510; Snyder *v.* Kunkleman, 3 Penna. R. 487, 17 Johns. 276; Commonwealth *v.* Strem-

[Freeburger's Appeal.]

back, 3 Rawle 344; Bingham *v.* Young, 10 Barr 395. And that proof of a fraudulent arrangement between Freeburger and Billmeyer was not necessary : Commonwealth *v.* Stremback, 3 Rawle 344.

They argued further that the plaintiff in the second execution was not to be injuriously affected by any declarations of the defendant in the execution : citing Wolf *v.* Canthers, 3 S. & R. 242; Whiting *v.* Johnson, 11 Id. 328; U. S. *v.* Mertz, 2 Watts 406.

*William C. Lawson* and *William Van Gezer*, for appellees.— The execution of appellees was first in point of time, and therefore *primâ facie* entitled to the money. The levy made for them was not disturbed by the defendant, but remained locked up until the sale. The direction not to sell until further orders did not injure Peter Freeburger or any one else, for there was but the one judgment in existence against the defendant. The orders on the 8th of August were to "take a levy." The sale was delayed while some arrangements were pending, but none were made. Still, there were no execution-creditors to complain. A few days' delay, while the parties are endeavouring to arrange the claim amicably, is not prohibited by the principles of humanity or the law.

If goods are *levied on under a fi. fa., and left with the defendant,* and the levy is suspended by plaintiff until countermanded, a second execution levied before the countermand will be preferred. This is the principle of all the cases cited, but the facts in this case are different. The goods were not left in defendant's custody.

The opinion of the court was delivered, October 31st 1861, by
STRONG, J.—The execution of Cameron & Billmeyer was first in the sheriff's hands, and it would be entitled to the money in court, if it had not lost its priority of lien by the conduct of the plaintiffs. But we think it had. The testimony of John Crosgrove, the sheriff, convinces us that the object sought to be accomplished by it, was not the enforcement of the judgment by levy and sale, but the acquisition of security for the debt. Such an object is not legitimate. It is an attempted perversion of the purpose of an execution, and consequently it postpones it to those which were subsequently issued. To this effect the authorities are numerous and uniform, as well as quite too familiar to need citation. Nor were they questioned in the argument. It was contended, however, that the evidence did not establish such a misuse of their execution by Cameron & Billmeyer as to bring it within the rule, and postpone it to the junior execution of the appellant. The sheriff, in whose testimony alone the evidence is to be found, states that when the writ of Cameron & Bill-

meyer came to his hands, he was ordered by the plaintiff and his attorney not to proceed with it until he got further orders; that Mr. Billmeyer and Orwig, attorney on the writ, gave him those orders; that some eight or ten days afterwards, Billmeyer gave him orders "to make a levy, but not sell;" that he then made a levy and had an appraisement made, and that subsequently there was an arrangement made between Billmeyer and Freeburger, the debtor, that the latter should have access to the property, and the keys were given up to him. That this was using the execution for another purpose than to collect the debt for which judgment had been given, admits of no doubt. In the language of Billmeyer, it was "holding the writ for a lien" not to sell, and the instant it was thus held by the direction of the plaintiffs, it was liable to be supplanted by any junior execution. The *fi. fa.* of Freeburger, the appellant, was issued and came into the sheriff's hands on the 18th of August. Then, for aught that appears in the evidence, the sheriff was under orders not to sell in pursuance of Cameron & Billmeyer's writ, and the debtor had free access to the property, with Billmeyer's consent. It is true the sheriff testifies that Billmeyer told him to go on and sell "about the time, and it may have been the very day the second execution came into his hands." Again: he states that he received the second writ on the morning of the 18th of August, and next morning levied on that, and advertised the 19th, and that his orders from Billmeyer to sell "were very shortly before, or on the same day." He adds, "I would not definitely say that it was on the same day or the day before." Again, he says, "About the time the second execution came into my hands (or a day or two before, it may have been at the same time), Billmeyer gave me orders to go on with his execution." All this leaves it quite uncertain whether the orders to sell under the first execution were prior or subsequent to the issue of the second. But as it is clearly established that the first was used merely as as a security until those orders were given, it is incumbent upon Cameron & Billmeyer to prove affirmatively that they were given before the sheriff received the second writ. This they have failed to do, and their execution, therefore, has lost its priority.

And now, to wit, October 31st 1861, it is ordered, adjudged, and decreed, that so much of the decree of the Court of Common Pleas as awards to Cameron & Billmeyer the sum of $110.88 be reversed, and the said sum is ordered to be paid to Peter Freeburger, and the appellees are ordered to pay the costs of this appeal.