## Lacock *v.* Lacock, Appellant.

*Divorce—Desertion—Justification—Cruel treatment — Condoning treatment.*

Where a husband has subjected his wife to a long and continued course of ill treatment, amounting to indignities to the person which rendered her condition intolerable, and forced her to leave his home, he will not be granted a divorce on the ground of desertion. When the libellant's own conduct was the main reason for the respondent's leaving him, a case of wilful and malicious desertion cannot be said to be proved. Now will the fact of the respondent after first leaving the libellant subsequently returned to him on the promise of good behaviour, be considered a condonation of the previous offenses.

Argued April 21, 1920. Appeal, No. 108, April T., 1920, by respondent, from decree of C. P. Washington County, May T., 1918, No. 133, granting a divorce in the case of Abner C. Lacock v. Theressa P. Lacock. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Libel in divorce. Before BROWNSON, J.

The case was referred to Harry A. Jones, Esq., as master.

The court granted a divorce. Respondent appealed.

*Error assigned* was the decree of the court.

*Drayton Heard,* and with him *John A. Murdock & Sons* and *Sterrett and Acheson,* for appellant.

*J. R. McCreight,* of *McIlvaine, Williams & McCreight,* and with him *R. W. Knox,* for appellee.

OPINION BY HENDERSON, J., July 14, 1920:

The cause of divorce set forth in the libel was wilful and malicious desertion. The answer denied the charge and alleged that the respondent left the home of her husband because of his cruel and barbarous treatment towards her and indignities to her person to which he had subjected her. The parties were married in 1903. After having spent about three years in San Francisco, they moved to the farm occupied by the complainant's father and mother. The complainant had charge of the farm, and his wife performed the principal part of the housework. In the summer of 1907 the parents moved away from the farm and the complainant and his wife continued to reside there until June, 1914, when the respondent left and went to the home of her mother. They had two children who accompanied her. The separation has continued. The respondent left her husband for a short time in 1912 because of alleged cruelty, but returned after an interview with him at which, as asserted, he promised better treatment. Different acts of physical violence were alleged by her and a course of conduct tending to humiliate her and make her position in the home intolerable and life burdensome. The learned trial judge found that the evidence as to cruel and barbarous treatment endangering the wife's life, taken as a whole, was not sufficient to establish her charge. This conclusion was probably reached because of the lack of corroboration of the respondent. The evidence was considered competent, however, on the charge of indignities to the person, but because of the reconciliation between the parties in 1912, the learned judge held it was only relevant if subsequent to the reconciliation the complainant committed a breach of the condition that his wife should not be subject to continual indignities, or manifested an intention and purpose to break it. Consideration of the evidence was therefore especially directed to the conduct of the complainant after his wife returned to his home. With respect to that evidence the

court finds: "The case is a close one and there is considerable difficulty, by reason of our not having seen the witnesses while testifying, in coming to a satisfactory conclusion with respect to Mr. Lacock's behavior toward his wife, and the spirit and purpose by which he was animated therein, after the reconciliation of 1912." Properly placing the burden on the respondent to establish a state of facts which would entitle her to a decree of divorce on the ground stated in her answer, the conclusion was reached that while the complainant was "constitutionally incapable of exhibiting towards his wife that positive love and sympathy which women crave and which is a characteristic incident of the ideal marriage state and indicates an inability to understand and appreciate her point of view with respect to the way in which she should be treated, the evidence does not sufficiently and satisfactorily establish a course of conduct on his part subsequent to the reconciliation amounting under the law to indignities to the person such as would have entitled the respondent to a divorce, or the manifestation or the entertaining by him of an intention and purpose to commit a breach of that condition." As a consequence the court found that if the husband's treatment justified his wife in leaving him in 1912, his conduct after her return would not sustain her in abandoning her home in 1914. There can be no doubt that the acts testified to by Mrs. Lacock, if they occurred, supported the charge of indignities to the person, if they were not of such a character as to endanger her life, and the return of the wife to her home under a promise expressed or implied of better treatment was not such a condonation of the husband's former conduct as would preclude her from showing the violation of such promise in a subsequent proceeding for a divorce. Acts which do not amount to cruelty may be evidence to show that no change had in fact taken place in the temper of the husband. They may be connected with that which went before to show he was not sincere in his assumed change of

purpose. When after a reconciliation there are indications of a disregard of promises made and some ill usage shown the wife is not bound to wait for a repetition of the conduct complained of. She may act in the light of her former experience, and the whole of the husband's conduct may be taken into consideration in determining whether there is a justification for her departure from her home. This is the doctrine of Hollister v. Hollister, 6 Pa. 449, and Augenstein v. Augenstein, 45 Pa. Superior Ct. 258, in which President Judge RICE reviews the law on this subject. If the respondent had reasonable grounds to apprehend a continuance of the former conduct of her husband, the fact that she returned to him in 1912 does not estop her from relying on that conduct in justification of her action. The effect of condonation of adultery as expressed in the statute does not apply to condonation of cruelty or indignities to the person. If such were the case, the fact that a wife continued to live with her husband after he had subjected her to physical violence or to repeated indignities would prevent her from taking advantage of the statute intended to relieve in such a situation. It is necessary to show a course of conduct to make out a case of cruelty or indignities to the person, unless in a single instance of extreme cruelty, and a course of conduct is only exhibited through an interval of time. In the absence of a statutory prohibition a wife is not to lose her day in court because through affection, or the interest of her children, or the reputation of the family, she is disposed to make another effort to avoid a domestic wreck. As we read the testimony there was evidence that Mrs. Lacock was not treated with conjugal kindness after the reconciliation and her evidence shows positive cruelty on the part of her husband and an ill-concealed disposition to keep in the home a domestic who was displeasing to his wife and toward whom he exhibited an interest well calculated to excite her suspicion or jealousy. Her testimony bears the appearance of candor and frankness, and

the fact that she left her home with her two children
and assumed the burden of their maintenance and care
is, as was said in Baker v. Baker, 195 Pa. 407, a strong
supporting fact.  Her evidence is also corroborated by
witnesses in some respects, and the fact is obvious as
disclosed by the testimony that the complainant did not
exhibit that regard for and interest in the happiness of
his wife to which she was entitled.  No complaint is
made of the faithfulness of her service, of her industry,
and her devotion to her family.  The charge by her hus-
band that she was improperly associating with other
men and that he doubted the paternity of her last child
is not supported by a particle of evidence, and her testi-
mony on the subject is corroborated.  It is to be noticed,
too, that the complainant has, so far as the case dis-
closes, exhibited no interest in the respondent nor in his
children since they left him except that he made some
contribution of clothing to the children.  It does not ap-
pear that he has communicated with them since they
went away.  It is not within the limit of probability that
the statements made by the wife, under the circum-
stances, were wholly fabricated.  The violent acts would
have appeared to be more frequent and of later date if
the respondent had wickedly intended to give false
testimony to resist an otherwise defenseless case.  Im-
portance is attached by the court to the conversation of
Mrs. Lacock with Emma Shrontz, who was sent to her
by the complainant, with reference to a reconciliation in
the spring of 1912, in the course of which, as stated by
the witness, Mrs. Lacock said that her husband was not
untrue to her and that he had not abused her.  This testi-
mony is weakened, however, by the indefinite character
of it and the lack of distinct recollection—the witness
having said that her recollection of the conversation was
not distinct and that she did not try to remember the
things exactly.  It is furthermore to be observed that
Miss Shrontz came as the agent of her husband, and
there might naturally be a disinclination on the part of

Mrs. Lacock to disclose to her the delicate circumstances surrounding her domestic life. It is not to be overlooked also that this statement was made before the return of Mrs. Lacock to her home and before the occurrences of which she complained after that return. The evidence of the complainant is aided by many leading questions and his contradictions in numerous instances are merely a declaration that he has no recollection of the particular occurrence, or the briefest denial of its occurrence. It lacks in many instances the frankness which might be expected under the circumstances.

After a careful examination of all of the evidence, we are drawn to the conclusion that the testimony introduced by the respondent is entitled to credit; that the plaintiff's promises, both expressed and implied, as an inducement to his wife to return to his home, were not faithfully complied with; and that the justification set forth by her is a sufficient defense against the complainant's action.

The decree is reversed at the cost of the appellee.