Nixon, Appellant, *v.* Nixon.

Argued January 7, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Richard A. Brown,* with him *J. Donald Swope,* for appellant.

*E. V. Bulleit,* for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, March 21, 1938:

Nixon, a captain in the United States Army, instituted divorce proceedings in Adams County on July 1, 1933. On a return of n. e. i. to the original and alias subpœnas, service was, had on respondent by publication. Appellee did not appear at the hearing before the master, nor was she represented by counsel. There is no dispute that the cause for divorce was clearly established. As no legal question is raised on the evidence, because of its character, it will serve no useful purpose to recite it in detail. It is sufficient to say that it shows a course of conduct on the part of appellee which undoubtedly entitled her husband to seek an end to their marital status. The master recommended a decree, which was granted on August 6, 1935.

A short time later, after appellant had remarried, appellee petitioned to have the decree vacated, the principal reason being that appellant had not properly proved the jurisdictional requirement of residence.

Other reasons were alleged. The court of common pleas, a different judge presiding, vacated the decree, holding that appellant was not a resident of Adams County when the libel was filed. On appeal the Superior Court affirmed this order, July 15, 1937. But, although it is the custom to mail notices of all decisions of that court to counsel, it was alleged by appellant that in this case postal notice was not sent to appellant's attorney of the action taken; this averment was not specifically denied by appellee. Appellant states that he remained unaware of the decision until its appearance in the Advance Reports. His petition for the allowance of an appeal by this Court was filed shortly after the forty-five day limit for such appeals.

The Act of May 19, 1897, P. L. 67, Section 4, as finally amended on May 11, 1927, P. L. 972, No. 464, Section 1, requires that: "An appeal from the Superior Court to the Supreme Court must be taken and perfected within forty-five days from the entry of the order, judgment or decree of the Superior Court. Appeals taken after the times herein provided for shall be quashed on motion: . . ." An appeal from the Superior Court to the Supreme Court may be instituted by petition to the Supreme Court for allowance. Such a petition lodged in the Supreme Court or with any of the Judges, pursuant to the Act of June 24, 1895, P. L. 212, Section 7[e], constitutes an appeal for the purpose of this statutory limitation. See *Platt-Barber Co. v. Groves*, 193 Pa. 475. An appellant is barred by the lapse of more than forty-five days between the judgment of the Superior Court and the filing of the petition for an allowance of appeal; otherwise there would be no finality to judicial action. See *Platt-Barber Co. v. Groves*, supra; *Harris v. Mercur (No. 1)*, 202 Pa. 313; *Wise v. Cambridge Springs Borough*, 262 Pa. 139; *Jordan v. Eisele*, 273 Pa. 95; *Miller & Sons' Co. v. Mt. Lebanon Township (No. 2)*, 309 Pa. 221; *Marcus v. Cohen*, 94 Pa. Super. Ct. 383. But, as this Court has indicated, the legislative pur-

pose is not to foreclose a party who satisfactorily explains his delay. However, the occasion must be extraordinary and must involve fraud or some breakdown in the court's operation through a default of its officers, whereby the party has been injured. There can be no extension of time as a matter of indulgence: *Schrenkeisen v. Kishbaugh,* 162 Pa. 45, 48. Such excuses as a client's illness *(Marcus v. Cohen,* supra), or neglect of an attorney *(Ward v. Letzkus,* 152 Pa. 318; *Wise v. Cambridge Springs Borough,* supra, at p. 144) are insufficient. Fraud, on the other hand *(Zeigler's Petition,* 207 Pa. 131; *York County v. Thompson,* 212 Pa. 561) or its equivalent, "the wrongful or negligent act of a court official" *(Singer v. Del., L. & W. R. R. Co.,* 254 Pa. 502, 505) may be a proper reason for holding that, as to the injured person, the statutory period does not run and that the wrong may be corrected by means of a petition filed nunc pro tunc within a reasonable time. As was stated in *Horn v. Lehigh Valley R. R. Co.,* 274 Pa. 42, 44, in reference to a statute limiting claims for workmen's compensation: "While the governing sections are mandatory, . . . we have held, where a party has been prevented from doing an act through fraud or circumstances that amount to fraud, the court might extend the time within which to do the act: . . ." And, in *Schwartz Bros. v. Adams Express Co.,* 75 Pa. Super. Ct. 402, 403, it was said: "Where a party has been prevented from appealing by fraud or by the ignorant or negligent act of a court official, it has been held that the court has power to extend the time for taking an appeal." Numerous cases involving appeals from justices of the peace have held that, if the delay in appealing is due to some act or omission of the justices themselves, an appeal may be allowed nunc pro tunc, provided it is prosecuted within a reasonable time.*

---

\* See *McIlhaney v. Holland,* 111 Pa. 634, 636; *Patterson v. Gallitzin B. & L. Assn.,* 23 Pa. Super. Ct. 54, 57; *Kuyk v. El-*

With specific reference to the failure of a court officer to give the proper notice, this Court stated as early as *Dawson's Appeal,* 15 Pa. 480, 482, in a dictum involving the entry of judgment in vacation: ". . . the court have the undoubted right . . . to enter a decree or judgment in vacation, and the parties are bound to take notice of it. The court usually directs the prothonotary to give notice to the parties of the decree or judgment entered; and if he should omit to do so, it would be a ground for a motion to enter an appeal, if made in proper time, nunc pro tunc." See also *Clark v. Wallace,* 3 P. & W. 441, 443.

Here the circumstances are such that appellant should not be made to suffer for the prothonotary's neglect to notify him of the order affirming the judgment. Despite the fact there is no statute or written rule of court requiring the prothonotary of the Superior Court to issue notices when orders have been entered, we understand that he has customarily assumed such a duty. This practice, grown to a custom, to notify counsel of the decisions of the Supreme and Superior Courts likewise obtains in the Eastern and Western districts. Neither appellant nor his counsel knew, nor had any reason to believe, there had been a mistake in the prothonotary's office. Under the circumstances they were entitled to expect this notice. The Harrisburg District is composed of twelve counties, and the opinions on cases arising there are handed down at various places at which the court sits, usually cities other than Harrisburg. Counsel lives in Adams County, and it would impose too great a burden to require him to daily inform himself by telephone. Appellant, through his at-

---

dridge, 29 Pa. Ct. Rep. 500; *Henderson v. Risser,* 9 Pa. Dist. Rep. 505; *Gable v. Bear,* 10 Pa. Dist. Rep. 630; *Lingle v. Erb,* 20 Lanc. L. R. 312; *Leisey v. Wise,* 21 Lanc. L. R. 350; *Castner v. Bilbow,* 1 Kulp 201; *Woodside & Storeger v. Penna. R. R. Co.,* 1 Pears. 301.

torney, was lulled into security by this practice, and his failure to receive such notice is sufficient reason for us to hold that appellant should be permitted an appeal. To hold otherwise would work a grave injustice.

But, it must be understood that, if it appears of record that the prothonotary's office sent a postal notice, this will satisfy all requirements of the custom and cannot be disputed. In circumstances such as these before us, an appellant must act with reasonable promptness after notice, or, in the absence of notice, when one should reasonably expect an opinion to be handed down. Here the time required by appellant to act was not unreasonable.

The appeal raises some very interesting questions, as the court below vacated the decree on the ground that it was without jurisdiction to hear the original cause in divorce. Appellee's petition to vacate was not proper under our practice. She prayed that the court "vacate and set aside the decree entered" and that she "be given an opportunity for a hearing for defending against the allegations in the libel set forth." A rule to show cause why the decree should not be vacated and set aside was granted. Testimony was taken by deposition and was accepted "to set aside the decree."

While there have been some definite rules promulgated as to proper practice for attacking decrees and judgments generally, no adequate practice seems to be laid down for decrees in divorce, although the rights of the parties therein rise just as high and are just as vital and important as in those relating to other decrees and judgments. While it has been long established in Pennsylvania that it is unnecessary to bring a separate suit to invalidate a decree of divorce, there has been no consistency in the type of attack that has been permitted. Petitions to vacate *(Willetts v. Willetts,* 96 Pa. Super. Ct. 198), to revoke *(Given v. Given,* 25 Pa. Super. Ct. 467), and to open decrees *(Lichenthaler v. Lichenthaler,* 72 Pitts. L. J. 148), have been employed. The prayers

of many petitions attacking these decrees have ignored the question whether or not the basis of attack has been a matter of record or dehors the record. See *Fidelity Ins. Company's Appeal,* 93 Pa. 242; *Willetts v. Willetts,* supra; *Hinton v. Hinton,* 96 Pa. Super. Ct. 267; *Carey v. Carey,* 121 Pa. Super. Ct. 251. Similarly, in ordinary civil practice the distinctions between motions to open and motions to strike off or vacate judgments have at times not been observed: *Hall v. West Chester Publishing Co.,* 180 Pa. 561, 565; and see *Bryn Mawr Bank v. James,* 152 Pa. 364; *Scholnick, Inc., v. Canelos,* 100 Pa. Super. Ct. 6.

But, it is of paramount importance that petitions to vacate and set aside should be distinguished from petitions to open. The former are based on fatal defects apparent on the face of the record, while petitions to open concern other matters associated with the decree or judgment, or those upon which the decree or judgment is based, in other words, the merits of the controversy ending in the final judgment. Where, therefore, the judgment is being attacked for a matter of record, the proper motion is to strike off or vacate, which operates as a demurrer to the record: *O'Hara v. Baum,* 82 Pa. 416. Where, however, new evidence relating to the cause of action must be introduced in order to sustain the attack, the judgment or order should not be vacated or set aside, but should be opened for the purpose of admitting the new evidence. As was stated in *Johnson v. Royal Ins. Co.,* 218 Pa. 423, 425: "It is well settled, and it needs no citations of authorities to sustain the proposition, that a judgment can be set aside or struck off only on the ground of irregularity or invalidity appearing on the face of the record. The court may for sufficient cause under its equitable powers open a judgment and let the defendant into a defense. But, as said by SHARSWOOD, J., in *Breden v. Gilliland,* 67 Pa. 34, 'Opening a judgment and striking it off are two entirely different things. No court has power to strike off a judg-

ment regular on its face.' No facts dehors the record will justify a court in setting aside or striking off a judgment." In the earlier case of *McCutcheon v. Allen*, 96 Pa. 319, 323, this Court had said: "The court has no power to strike off a judgment regular on its face when the facts are controverted: . . ." And, in the recent case of *Giles v. Ryan*, 317 Pa. 65, 68, the Court declared: "A judgment cannot be vacated or stricken off except for defects apparent on the face of the record . . . or unless a fact which renders it irregular is placed upon the record by an amendment nunc pro tunc. . . ." Numerous other cases, including the following, have pointed out this difference between a motion to open and a motion to strike off or vacate: *North & Co. v. Yorke*, 174 Pa. 349; *Lawrence v. Smith*, 215 Pa. 534; *Williams v. Notopolos*, 247 Pa. 554; *Pacific Lumber Co. v. Rodd*, 287 Pa. 454, 459; *Sweigart v. Conrad*, 12 Pa. Super. Ct. 108; *Rome S. & S. Station v. Finch*, 111 Pa. Super. Ct. 226.

In the instant case, the attack was based on facts allegedly showing nonresidence of appellant; they were intended to rebut his testimony of residence. The petition should not have been to vacate and set aside the decree, but to open it to let in this evidence.

The effect of the different motions or petitions may vary. Thus in *Giles v. Ryan*, supra, it was held that the lien of a money judgment is lost where it is stricken off, but not where it is merely opened. While this particular case would have no bearing on divorce decrees, other cases involving the divergent effect of the two types of attack are applicable to divorce decrees as well as ordinary judgments and decrees. Thus, while there is no time limit within which to act in striking off or vacating a judgment, it must be in a reasonable time after knowledge, while applications to open, where the cause has been litigated, must be made within term time, except in extraordinary equitable circumstances requiring a contrary result: *Salus v. Fogel*, 302 Pa. 268. And see

*Hornick v. Bethlehem Mines Corp.*, 310 Pa. 225; *Kauffman v. Reese*, 77 Pa. Super. Ct. 601, 604; *Kappel v. Meth*, 125 Pa. Super. Ct. 443, 450. The same distinction must be observed as to decrees in divorce, not only for the sake of uniformity of practice but finality of judgment as well.

The importance of the distinction here lies in the equitable character of a petition to open. That such a petition is equitable in nature and must be supported by such grounds as would justify a chancellor in entering a decree, has been frequently reiterated by this Court. See *Mielcuszny v. Rosol*, 317 Pa. 91; *George v. George*, 318 Pa. 203; *U. S. Savings & Trust Co. v. Helsel*, 325 Pa. 1, 5; *Schuylkill Trust Co. v. Sobolewski*, 325 Pa. 422, 424; *Pierce v. Kaseman*, 326 Pa. 280, 283-284. It is an appeal to the conscience of the court and can be granted only on equitable considerations. And this rule is equally applicable to divorce proceedings: *Catts v. Catts*, 35 Pa. Super. Ct. 293; *Zettlemoyer v. Zettlemoyer*, 79 Pa. Super. Ct. 405, 408 (where, however, the word "vacate" was loosely used).

Treating appellee's petition as one to open the decree, it was error to receive this evidence as to the jurisdiction of the court, no equitable ground having been shown for its admission. It is admitted appellee knew that the divorce proceedings were pending in Adams County. She knew that her husband must prove residence. This he did, and it was her duty to appear and contest the case. Instead she permitted the proceeding to go through, apparently acquiescing in everything before the court. Months after the case was closed by a judgment and the husband had remarried, she presented this petition; after children were born, the decree was set aside on this so-called new evidence, all of which was available to appellee at the time of the original hearing and could have been submitted. It was not "after-discovered" evidence. The equities of the case in no sense

required the decree to be opened. The court below should not have allowed it.

It is true the Superior Court has approved vacating a decree where the respondent was fraudulently kept unaware of the proceeding: *Walton v. Walton,* 84 Pa. Super. Ct. 366; *Estok v. Estok,* 102 Pa. Super. Ct. 604. But there was no fraudulent concealment here. Appellee not only had actual knowledge of the action, but received the notice required by law. That it was by publication is unobjectionable. When the State legislature prescribes a reasonable method of service, it is as to persons resident herein and those seeking relief in our courts due process. In so far as this State's courts are concerned, service in a divorce suit by publication after personal service has failed is due process: *Lyon v. Lyon,* 30 Pa. Co. Ct. R. 342, 353; *Christmas v. Christmas,* 62 Pitts. L. J. 525; and see *Banks v. Banks,* 189 Pa. 196. To the same effect are *Gorges v. Gorges,* 42 Idaho 357, 365; *Axtell v. Axtell,* 181 Ga. 24, 26; *Geary v. Geary,* 272 N. Y. 390, 398-399; 2 Cooley, Constitutional Limitations (8th ed., 1927), 856. In the absence of fraud on the respondent, the courts will not, where the record on its face shows residence, open the decree when the term has passed, and, unless the equities are with respondent, will not do so in term time.

Here, not only was there due process as to the original proceeding, but respondent actually knew of the subsequent proceedings all along and had in her possession at all times the matters she delayed submitting to the court. Even if the evidence would have balanced the scales it was highly inequitable to allow her to sit by while her husband made out a valid case for divorce, and then after a decree had been entered, time elapsed, and her divorced husband remarried, to permit a reëxamination of matters already determined by the court and essential to its decree. Remarriage of a divorcing spouse alone may be insufficient ground for barring an attack on the decree *(Allen v. Maclellan,* 12 Pa. 328),

but when coupled with "inattention and indifference" (see *Catts v. Catts,* supra, at p. 296) on the part of the other spouse throughout the original proceedings, it creates weighty considerations of equity on the side of appellant; a chancellor in these circumstances would not be justified in finding otherwise. Nor was there fraud on the court in appellant's failure to testify to his purchase of a house in Washington, since that was merely a single factor to determine what his mental state as to residence was. We will speak of this later. At best, this evidence could only cast doubt on his own interpretation of "bona fide residence." There was no deception or fraud. There is not even an allegation of perjury. The court below, Judge McPHERSON presiding, was in no way imposed upon by appellant. Therefore it was error to admit the evidence to disturb his decree.

But even if appellee had alleged sufficient equitable grounds to open the decree, the court below should have left it intact. At the original hearing it was shown that Nixon, an army officer, was subject to be ordered anywhere by the War Department, and, as such officer, could not claim any station as a permanent home—generally these officers call their place of birth or the residence of their parents their home. Appellant was born in Gettysburg in 1895 and lived there until he was appointed to the United States Military Academy in 1915. Since his graduation in 1918, he has been continuously in the service of the United States Army, traveling from place to place in the performance of his duties. In 1922 he married the appellee in Brookline, Mass., where her home was, and from then on she lived with him at each place to which he was assigned. He testified that he had never established a residence elsewhere, that though he had never voted, he never registered elsewhere to vote; he annually gave his residence to the War Department as Gettysburg; his mother was still living there, and at his home he kept various of his personal belongings. This, being uncontradicted, adequately

supported the master's conclusion that appellant's bona fide residence was Gettysburg. The fact that appellant spent much time out of the State did not under these circumstances preclude such a finding. See *Shaw v. Shaw,* 72 Pa. Super. Ct. 191. It cannot be doubted that the performance of duties by an army officer in the national defense justifies absence from the state where residence is claimed. See *Gearing v. Gearing,* 90 Pa. Super. Ct. 192, where it was held that a naval officer whose duties took him to sea nevertheless had a residence in Philadelphia; the declared intention of the officer to make it Philadelphia, rather than the place to which his government's service ordered him, was sufficient for permanent residence. It would be most unwise to hold that if a citizen enters into a government service that has no fixed place of employment, he is to be deprived of his rights as a civilian under the laws of the state of his origin. It is for this reason that Article VIII, Section 13, of this Commonwealth's Constitution guarantees such a person that he shall not be deemed to have lost his voting residence here.

Appellee's theory was that since appellant purchased a house in Washington he intended to remain permanently at that place, but an examination of the testimony by depositions shows this circumstance was not sufficient to disprove residence at Gettysburg. The burden was on appellee to prove a changed residence and that the alleged new dwelling really constituted a new residence. This was flatly contradicted by the depositions on the other side, indicating that the house was bought according to the custom of many such government employees who, assigned to service in Washington for a period of time, purchase houses rather than rent them, to avoid exorbitant rental charges. They consider it quite easy to dispose of such property either by sale or lease in the event of transfer to a new post. There being but "oath against oath" as to appellant's state of mind on acquiring the Washington dwelling, appellee

did not bear the burden thrust upon her by the presumption that the original bona fide residence of the appellant remained such. The fact appellant paid a tax required by the laws of the District of Columbia on all persons "maintaining a place of abode" there, does not create a residence in that place, for the statute expressly recognizes that such persons may have a "legal residence" elsewhere. Nor does the designation of residence contained in appellant's automobile license have any weighty significance. It is not uncommon for persons temporarily in another state to have their cars licensed in that state.

That appellant omitted to mention the fact his wife returned to him for a short time after he had begun his action for divorce was not a fraud on the court. Appellant claimed and testified she was separated from him and there was no reconciliation. She forced her way into his home, and he withdrew from it. But assuming that marital relations were resumed, which appellant denies, and which appellee contends is presumed from the fact that they were in the same house together (see the dictum in *Koch v. Koch,* 62 Pa. Super. Ct. 607, 612), the divorce is not invalidated. Condonation, while it is a defense to a libel based on adultery, is not a bar to one based on cruel and barbarous treatment and indignities to the person. This was early pointed out in *Steele v. Steele,* 11 W. N. C. 21. And, in *Hollister v. Hollister,* 6 Pa. 449, 452-453, where the wife was the libellant, this Court set forth at length the reasons for the distinction.

The resumption of marital relations after the alleged cruelty and indignities is merely a factor to consider *(Bortell v. Bortell,* 78 Pa. Super. Ct. 201, 203, 204) in determining whether the mistreatment was really such as to make permanency of the marital status impossible, that is, whether appellant's condition was really made intolerable. See *Mathias v. Mathias,* 114 Pa. Super. Ct. 444; *Cunningham v. Cunningham,* 119 Pa. Super. Ct. 380, 381. The rule sought to be adduced from *Lacock*

270

*v. Lacock,* 74 Pa. Super. Ct. 378, and *Epstein v. Epstein,* 93 Pa. Super. Ct. 398, is that a reconciliation constitutes a conditional forgiveness barring a divorce in this class of cases. These cases do not actually so hold, and the rule of the later cases *(Mathias v. Mathias* and *Cunningham v. Cunningham,* both supra) is established as the governing rule.

The decree of the Court of Common Pleas and the Superior Court is reversed, and the decree of divorce is reinstated; costs to be paid by appellant.