Grone v. Northern Insurance Co.

*D. A. Lewis* and *John L. Pipa*, for plaintiffs.

*George O. Wagner, William S. Bailey, Esdras Howell* and *Thomas R. White, Jr.,* for defendants.

KREISHER, P. J., April 7, 1956.—This suit was filed in the Court of Common Pleas of Montour County on May 14, 1953, entered to no. 90, February term, 1953.

Six of the defendants issued to plaintiffs an insurance policy covering plaintiffs' premises in Mahoney Township, Montour County. They bear the following dates and amounts:

| Name | Date | Amount |
|------|------|--------|
| Northern Insurance Company of New York ...June | 18, 1952 | $10,000 |
| Boston Insurance Company ......June | 18, 1952 | $10,000 |
| Westchester Fire Insurance Company ..June | 18, 1952 | $10,000 |
| National-Ben Franklin Fire Insurance Company ......May | 10, 1952 | $15,000 |
| Buffalo Insurance Company ......May | 10, 1952 | $15,000 |
| Briar Creek Farmers Mutual Insurance Company ......September | 21, 1951 | $ 4,000 |

The Montour Mutual Fire Insurance Company, on March 23, 1951, issued its policy covering the same premises, then owned by Ray Cragle and Florence Cragle, in the sum of $4,500. This policy, with the consent of the issuing company, was assigned on March 8, 1951, to plaintiffs, who then became the owners of the premises. Only the sum of $2,250 is claimed on this policy as being applicable to this loss.

On June 19, 1952, the cause of action arose by reason of a fire on that date which totally destroyed plaintiffs' premises.

The total of the policies is $66,250, and the total damage suffered by plaintiffs by reason of said fire is $61,151.73.

Due proofs of loss were filed by plaintiffs with each defendant insurance company, who refused to pay plaintiffs' loss. Suit then followed in the State court.

The suit against the seven defendants was instituted in this court on May 14, 1953, and service made on three nonresident defendants, namely, Northern Insurance Company of New York, Boston Insurance Company and Westchester Fire Insurance Company, May 18, 1953, under The Insurance Department Act of May 17, 1921, P. L. 789, art. 2, sec. 210, as amended by the Act of April 27, 1927, P. L. 476, sec. 2, 40 PS §48, a Pennsylvania statute providing for service on a foreign insurance company doing business in Pennsylvania.

Counsel for the Buffalo Insurance Company and National-Ben Franklin Fire Insurance Company accepted service for them May 19, 1953; the Montour Mutual Fire Insurance Company was served by the High Sheriff of Montour County May 15, 1953, and the Briar Creek Farmers Mutual Insurance Company was served by the High Sheriff of Columbia County May 19, 1953.

Three of the defendants, namely, Northern Insur-

ance Company of New York, Boston Insurance Company and Westchester Fire Insurance Company, filed a joint petition for removal of the case to the United States District Court for the Middle District of Pennsylvania on June 4, 1953, in which petition they allege that service of process was made on them May 18, 1953.

The Buffalo Insurance Company filed a separate petion for removal on June 4, 1953.

When John L. Pipa, Jr., one of counsel for plaintiffs, learned that petitions for removal were filed (not by written notice as required by the Removal Act), he filed a motion to dismiss the petitions with the Clerk of the United States District Court for the Middle District of Pennsylvania, in the United States Court House, Lewisburg, on June 19, 1953, and on the same day, by letter, forwarded a copy of the dismissal motion, together with notice that a hearing would be held thereon July 16, 1953, at 11 a.m., in the United States Court House, Lewisburg, to each of counsel for the removing petitioners.

The motion to dismiss dealt with the following:

(a) Lack of total diversity of citizenship.

(b) All of the defendants are not parties to the petitions for removal.

(c) The claim of plaintiffs is not a separate and independent claim and cause of action.

(d) Petitioners failed to strictly comply with the removal statute.

This matter was so proceeded in by the United States District Court that it filed the following opinion and order:

### "MEMORANDUM

"Plaintiffs brought an action in the Court of Common Pleas of Montour County, Pennsylvania, against the seven defendants alleging liability on certain policies issued by each defendant company for a fire loss

which occurred on the premises of plaintiffs located in Montour County, Pennsylvania, and for which the defendants refused to pay for reasons of fraud and other defenses. The action was removed to this Court and the matter is now before the Court on motion of plaintiffs to remand. I do not think it necessary to consider in detail the fifteen reasons given by plaintiffs as the basis of their motion.

"The pertinent removal statute, 28 U. S. C. Section 1441(c) states:

" 'Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or in its discretion, may remand all matters not otherwise within its original jurisdiction.'

"Defendants strongly urge that the claims against the several insurance companies are separate and independent claims, that there is diversity, that the amount involved against each defendant exceeds $3,000.00 and that accordingly the case should not be remanded but should remain removed to this Court.

"The case, in my opinion, is completely covered by American Fire & Casualty Co. vs. Finn, 341 U. S. 6. In that case a suit was brought in a Texas Court by a resident of that State to recover for a loss by fire. The complaint named as defendants two foreign insurance companies and a resident agent of the companies. The case was removed to the Federal Court. Prior to trial plaintiff tried unsuccessfully to remand. After trial, by jury, judgment was entered for the insurance claimed and costs against the one insurance company. No liability was found against the other insurance company or the local agent. The District Court denied motion to vacate the judgment and the Court of Appeals affirmed. The latter Court concluded that there

were causes of action against the foreign insurance companies 'separate and independent' from that stated against the resident individual, and that the entire suit was removable. The Supreme Court reversed, stating, inter alia:

" 'In the declaration or bill, an allegation of citizenship of the parties must be made, as it has been held that an averment of residence is insufficient.' The same court has also said that 'citizenship,' and 'residence,' are not synonymous terms.

" '. . . Considering the previous history of "separable controversy," the broad meaning of "cause of action," and the congressional purpose in the revision resulting in 28 U. S. C. Section 1441(c), we conclude that where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under Section 1441(c).

" 'In making this determination we look to the plaintiff's pleading, which controls. . . . The single wrong for which relief is sought is the failure to pay compensation for the loss of property. Liability lay among three parties, but it was uncertain which one was responsible. Therefore, all were joined as defendants in one petition. . . .'

"That, it seems to me, is the precise situation in this case; here, as in the Finn case, 'It cannot be said that there are separate and independent claims for relief as Section 1441(c) requires.' Consequently, there was no right to removal.

"This conclusion is confirmed by the fact that three of the defendant companies having instituted a declaratory judgment proceeding seeking to have their policies cancelled on the basis of fraud, three other of the defendant companies herein intervened on the basis that the determination of the issues involved in the equity proceeding would have a direct bearing on their own

defenses, thus in effect negativing their present contention of separate and independent claims or causes of action as the basis for their opposition to remand.

"An appropriate order will be entered.

"December 17, 1954      (s) Frederick V. Follmer

_____

. United States District Judge

"ORDER

"NOW, to wit., December 17, 1954, in accordance with Memorandum filed this day, it is Ordered that the above entitled case be and same is hereby remanded to the Court of Common Pleas of Montour County, Pennsylvania.      "(s) Frederick V. Follmer

_____

United States District Judge"

On January 6, 1955, an appeal from the foregoing memorandum and order was filed in the Circuit Court of Appeals by said insurance companies.

By agreement filed March 17, 1955, said appeal was withdrawn and dismissed.

On June 10, 1953, plaintiffs, by their attorneys, filed a præcipe for writ of entry of judgment in the Court of Common Pleas of Montour County, in accordance with Pa. R. C. P. 1037(b) for defendants' failure to file an answer to plaintiffs' complaint within 20 days in compliance with the endorsement on the complaint.

On the same date the prothonotary entered judgment against all of the defendants in the total amount of $64,718.81, and assessed damages against each defendant in an amount made certain by computation.

On August 6, 1953, National-Ben Franklin Insurance Company, Buffalo Insurance Company, Briar Creek Farmers Mutual Insurance Company and Montour Mutual Fire Insurance Company filed their motion to strike off said judgments. On August 26, 1953, plaintiffs filed their answer to said motion.

On December 23, 1954, the three remaining insur-

ance companies filed their motion to strike off said judgments against them and plaintiffs filed their answer to this motion January 13, 1955.

On both motions to strike, the court granted a rule on plaintiffs to show cause why the default judgment entered June 10, 1953, should not be struck off and that is the problem now before the court.

At the outset we deem it necessary to review the distinction between a motion to open and a motion to strike, as we are here dealing only with the latter.

This distinction is ably set forth in the opinion by Mr. Chief Justice Kephart in the case of Nixon v. Nixon, 329 Pa. 256, beginning on page 263, as follows:

"But, it is of paramount importance that petitions to vacate and set aside should be distinguished from petitions to open. The former are based on fatal defects apparent on the face of the record, while petitions to open concern other matters associated with the decree or judgment, or those upon which the decree or judgment is based, in other words, the merits of the controversy ending in the final judgment. Where, therefore, the judgment is being attacked for a matter of record, the proper motion is to strike off or vacate, which operates as a demurrer to the record: O'Hara v. Baum, 82 Pa. 416. Where, however, new evidence relating to the cause of action must be introduced in order to sustain the attack, the judgment or order should not be vacated or set aside, but should be opened for the purpose of admitting the new evidence. As was stated in Johnson v. Royal Ins. Co., 218 Pa. 423, 425: 'It is well settled, and it needs no citation of authorities to sustain the proposition, that a judgment can be set aside or struck off only on the ground of irregularity or invalidity appearing on the face of the record. The court may for sufficient cause under its equitable powers open a judgment and let the defendant into a defense. But, as said by Sharswood, J., in Breden v. Gilliland,

67 Pa. 34, "Opening a judgment and striking it off are two entirely different things. No court has power to strike off a judgment regular on its face." No facts dehors the records will justify a court in setting aside or striking off a judgment'. In the earlier case of McCutcheon v. Allen, 96 Pa. 319, 323, this Court had said: 'The court has no power to strike off a judgment regular on its face when the facts are controverted: . . .' And, in the recent case of Giles v. Ryan, 317 Pa. 65, 68, the Court declared: 'A judgment cannot be vacated or stricken off except for defects apparent on the face of the record . . . or unless a fact which renders it irregular is placed upon the record by an amendment nunc pro tunc . . .' Numerous other cases, including the following, have pointed out this difference between a motion to open and a motion to strike off or vacate: North & Co. v. Yorke, 174 Pa. 349; Lawrence v. Smith, 215 Pa. 534; Williams v. Notopolos, 247 Pa. 554; Pacific Lumber Co. v. Rodd, 287 Pa. 454, 459; Sweigart v. Conrad, 12 Pa. Super. Ct. 108; Rome S. & S. Station v. Finch, 111 Pa. Super. Ct. 226."

In addition to the foregoing, there are other well established fundamental principles applicable on motions to strike off judgments entered by default as distinguished from other judgments.

In Tide Water Associated Oil Company v. Kay, 168 Pa. Superior Ct. 263, at page 267, of the opinion it is stated:

"The rule is well settled that, 'The power of entering a summary judgment should be cautiously exercised. If a doubt exists a judgment should not be entered': Holladay v. Fidler", 158 Pa. Superior Ct. 100.

Likewise, in Roth v. Golden Slipper R. & C., Inc., 167 Pa. Superior Ct. 558, on page 561, it is stated:

"The power to enter summary judgment is intended only for clear cases, and any doubt should be resolved against the entry of such judgment." Citations omitted.

In Townsend v. Universal Ins. Co., 129 Pa. Superior Ct. 188, at page 191, it is stated:

"Summary judgments should be entered only in clear cases: Rudman et ux. v. City of Scranton et al., 114 Pa. Superior Ct. 148, 155, 173 A. 892. It is the consistent policy of the courts to give full opportunity to parties to plead their cause of action, if they have one, and not turn them out of court for technical errors. That is especially true if the objections refer more to the manner of the pleading than to a complete lack of a cause of action. If the pleading is vague or insufficient and it appears that a clear and adequate statement of facts can be averred, permission should be given to amend. It is always desirable to dispose of litigation on the merits, if possible. As was said in Stevens v. Smith, 310 Pa. 287, 288, 165 A. 237: 'Under present day practice and procedure we will not foreclose a cause of action for defects resting more on form than want of substance.' See, also, Rhodes v. Terheyden et al., 272 Pa. 397, 116 A. 364; Peabody v. Carr, 316 Pa. 413, 175 A. 378; National Cash Register Co. v. Ansell et al., 125 Pa. Superior Ct. 309, 189 A. 738."

It is true as above stated that judgments should be stricken only for irregularities apparent on the face of the record, that the proceedings on the motion are not addressed to the court's discretion or essentially equitable as is the case on a motion to open; however, where the judgment was entered by default, it appears the court may along with the alleged irregularity consider the promptness in filing the motion, any reasonable explanation or excuse for the delay and whether or not a defense is shown to exist upon the merits: Britton v. Continental Mining and Smelting Corporation, 366 Pa. 82.

Keeping in mind the foregoing principles we now consider the contentions of the respective parties.

It is the contention of all defendants that the action

taken by four of the defendants on June 4, 1953, forthwith terminated the State courts' authority to proceed any further, relieved defendants from filing an answer in the State court and consequently caused any action taken by plaintiffs in the State court subsequent to said date to be void and of no effect, or at least voidable and subject to be set aside on proper application.

On June 4, 1953, said date, incidently being prior to the expiration of the 20 day period set forth in the endorsement on plaintiffs' complaint requiring defendants to file an answer in the State court, the Buffalo Insurance Company, in a separate petition, and the Northern Insurance Company of New York, the Boston Insurance Company and the Westchester Fire Insurance Company, in a joint petition sought to have the said action instituted in the State court, "insofar as their actions are concerned and, if remaining defendants shall so move, the whole of said action", removed to the Federal District Court for the Middle District of Pennsylvania, pursuant to and in an accordance with the Act of Congress of June 25, 1948, c. 646, 62 Stat. at L. 937, 28 U. S. C. §1441, etc.

The procedure for removal is set forth in 28 U. S. C. §1146, which was amended by Act of Congress of May 24, 1949, c. 139, §83, 63 Stat. at L. 101, as follows:

"(a) A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a verified petition containing a short and plain statement of the facts which entitle him or them to removal together with a copy of all process, pleadings and orders served upon him or them in such action.

"(b) The petition for removal of a civil action or proceeding shall be filed within twenty days after the receipt by the defendant, through service or otherwise,

of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within twenty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

"(c) If the case stated by the initial pleading is not removable, a petition for removal may be filed within twenty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

"(d) Each petition for removal of a civil action or proceeding, except a petition in behalf of the United States, shall be accompanied by a bond with good and sufficient surety conditioned that the defendant or defendants will pay all costs and disbursements incurred by reason of the removal proceedings should it be determined that the case was not removable or was improperly removed.

"(e) Promptly after the filing of such petition and bond the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the petition with the clerk of such State court, which shall effect the removal and the State Court shall proceed no further unless and until the case is remanded."

On the same date the four above mentioned petitioning defendants filed the bond as required by subsection (d) above quoted and in addition thereto filed an answer in the Federal District Court setting forth six defenses in accordance with the Federal Rules of Civil Procedure.

On June 8, 1953, the three nonpetitioning defendants filed in said Federal Court a similar answer setting forth five defenses.

On June 10, 1953, counsel for plaintiffs caused the aforementioned default judgments to be entered against all defendants in the State court for failure to file an answer therein within the said 20 day period which expired June 8, 1953.

Local counsel for plaintiffs whose name and address appears on the complaint under the wording "serve all papers on", accepted service of the petitions for removal on June 6, 1953, and on the same date, copies thereof were filed in the office of the prothonotary of Montour County.

On August 6, 1953, the Buffalo Insurance Company, the National-Ben Franklin Insurance Company, the Briar Creek Farmers Mutual Insurance Company and the Montour Mutual Fire Insurance Company presented their petition to this court to strike off said default judgments entered against them. A rule was granted and made returnable to September 3, 1953.

On August 28, 1953, plaintiffs filed their answer to said petition to strike and rule granted thereon.

On December 17, 1954, the above quoted memorandum of the Federal District Court was filed remanding said case to the State court.

On December 23, 1954, the Northern Insurance Company of New York, the Boston Insurance Company and the Westchester Fire Insurance Company filed their petition to strike and on January 13, 1955, plaintiffs filed their answer to this petition.

Defendants contend the said default judgments were improperly and irregularly entered because subsection (e) of the above quoted Act of Congress strictly prohibits any and all further proceedings in the State court after removal is effected.

They further contend the Amendatory Act of 1949 changed the law on this subject so that new removal is effected upon the filing of the petition for removal and the bond.

This precise question is treated at length in the case of Hopson v. North American Insurance Company, 71 Idaho 461, 233 P. 2d 799, 25 A. L. R. 2d 1040. In that case the present law is distinguished and compared with the prior law and it was concluded a change existed requiring the default judgment to be stricken.

Plaintiffs concede that soundness of the result was reached in the Hopson case, because the third paragraph of the opinion states:

"The defendant . . . in all respects, as conceded by appellant, complied with the procedural requirements to effectuate such removal. . . ."

Likewise, the annotation following said case in 25 A. L. R. 2d 1045, contains the following opening statement:

"This annotation assumes that the procedural steps prescribed by the federal statute for removal of causes have been complied with, and is confined to the single question of the effect of such statute upon the State court's jurisdiction in the interval between removal and the federal court's order remanding the cause to the State court."

Plaintiffs contend first that the three nonpetitioning defendants have no standing at all because they neither filed a petition for removal or an answer to the complaint in the State court and, therefore, as to them the judgments were properly and regularly entered.

The three defendants did, however, file an answer in the Federal court on June 8, 1953, which was two days prior to the entry of said default judgments and they have also petitioned with the other defendants to strike off said judgments, so that actually they did not lie dormant, but did take affirmative action within the said 20 day period. The question, however, arises as to whether or not this action taken by them is sufficient to justify the court to strike off the judgments for being improperly entered.

We here note in passing that counsel for plaintiffs in entering said judgments proceeded under subsection (b) of R. C. P. 1037, which provides, inter alia, as follows:

"The prothonotary, on præcipe of the plaintiff, shall enter judgment against the defendant for failure to file within the required time an answer to a complaint endorsed with a notice to plead or for any relief admitted to be due by the defendant's pleadings. . . ."

In view of the fact that service of the petitions for removal and the Federal court answers of defendants was accepted by plaintiffs' counsel on June 8, 1953, and that copies of the Federal court proceedings were filed in the State court on June 9, 1953, it seems to us under these circumstances it would have been better practice for plaintiffs on June 10, 1953, to have proceeded under subsection (c) of R. C. P. 1037, which provides:

"(c) In all cases, the court, on motion of a party may enter an appropriate judgment against a party upon default or admission."

It is our considered opinion had plaintiffs followed the foregoing suggested procedure the judgments might not have been entered, but even if they had been, they would not have carried with them the stigma of the prompt snap judgments they now bear.

Furthermore, the power of the prothonotary to enter these judgments under the circumstances is questionable. In volume 1, Goodrich-Amran, sec. 1037 (c)—1 page 181 Commentary, it is stated:

"Rule 1037 (c), though brief in text, is wide in its application. It gives a blanket authorization to the court to enter 'appropriate' judgments against *any* party upon 'default' or 'admission'. The power of the prothonotary, under Rules 1037 (a) and (b) is limited, and can only be exercised, in ministerial fashion, where no justiciable issues are presented. The power under

Rule 1037 (c) extends through the whole gamut of legal power."

Since, copies of the Federal proceedings were filed in the prothonotary's office on June 9, 1953, it would seem to follow that the prothonotary in entering judgments on June 10, 1953, was exercising not only a ministerial function, but also a judicial function, which he had no power to pass upon under the rule.

In Wentzell v. Cooper, 166 Pa. Superior Ct. 619, on page 620 and 621, it is stated:

"There was no abuse of the court's discretion. In fact we may say that it will be an extraordinary occasion when we will reverse a court for opening a snap judgment, taken by default, without communication to counsel of record. This matter was discussed in Curran v. James Regulator Company, 154 Pa. Superior Ct. 261, 36 A. 2d 187, in which Judge Kenworthey quoted the 25th Canon of Ethics of the American Bar Association, and then observed: 'All the members of this court were once practicing lawyers. We are proud of the high level of courtesy and consideration shown to each other by lawyers throughout the commonwealth. From our knowledge of many of its members, the bar [of the court below] . . . is no exception . . . [and] that, by custom, one member of that bar would not, except in rarest circumstances, apply for a default judgment without giving to his opponent fair notice of his intention to do so . . . ' From our knowledge of many of the bar of Somerset County, its members have that same high level of courtesy and consideration shown to each other by practicing lawyers throughout the State."

The court would probably be justified in granting defendants' motion solely on the foregoing reasoning and end this already too lengthy opinion at this point. However, there are, in our opinion, additional sound reasons for granting defendants' motion

which merit our consideration and compel us to continue.

The right to remove a case from a State court to a Federal court is purely statutory, being dependent on the will of Congress. Such acts are held to be constitutional and a State may not restrict or limit the right; however, such acts are purely statutory and are to be given a strict construction: Hoyt v. Sears, Roebuck & Company, C. C. A. 9th (1943) 130 F. 2d 636.

The practice and procedure for removing a case is governed by the Federal statute and not by the Federal Rules of Civil Procedure which govern procedure after removal: Flowers v. Aetna Casualty & Surety Company, 163 F. 2d 411.

This statutory procedure has been considerably simplified by the Amendatory Acts of 1948 and 1949. The former procedure of filing the petition for removal in the State is abandoned and repealed and now under subsection (a) of section 1446, above quoted, the petition is filed forthwith in the Federal court.

As a result of this change the question of whether or not the action is removable and the procedure to remove has been properly complied with is one for consideration of the Federal court and not the State court. Under the prior law the State court had this function.

In Pearson v. Zacher, 177 Minn. 182, 184, it is stated:

"It [the state court] is charged with the duty of determining whether the record presented to it shows upon its face that the applicant has a right to the removal. It will not yield its jurisdiction until a legally sufficient record has been presented, and it is its duty in every case to examine the petition and bond."

Now, however, this duty falls on the Federal court and its determination of all questions is binding on the State court: Stoll v. Hawkeye Cas. Company of

Des Moines, Iowa, (1950) 185 F. 2d 96, 22 A. L. R. 2d 899. The Federal court acquires its jurisdiction from the petition and not from the bond: Tucker v. Kerner, 186 F. 2d 79, (1950).

This change in the law would seem to answer plaintiff's main contention that the limitation on the State court proceeding after removal is effected, as set forth in subsection (e) of section 1446, above quoted, does not apply unless all statutory procedural requirements are strictly complied with by petitioners. Referring, therefore, to the above quoted memorandum, as filed by the Federal court, we at once observe that the case was remanded, not because all defendants failed to join or for statutory procedural defects, which, incidentally, plaintiffs pressed in Federal court, but rather because the claims were not considered to be separate and independent claims. This finding in effect was passing upon the merits of the petition and it is, therefore, a logical conclusion that the Federal court found that the statutory procedural requirements had been complied with by petitioners and it naturally follows the State court is bound by that finding.

From this conclusion it seems to be unnecessary for us to enter into a discussion in regard to the many procedural defects, as to the petitions for removal, the bonds filed or the notices given, which plaintiffs have set forth in their answers to the motions to strike.

We next consider the time element involved. Under subsection (b) of section 1446, above quoted, a petition for removal must be filed within 20 days after service of the complaint. This is the same period of time within which an answer must be filed. The Federal court must examine the status of the case to determine jurisdiction not from the petition for removal but from the contents of the complaint: McCracken v. Brown and Root, (1951) 101 F. Supp. 180.

It is true that defendants could have filed an answer

in the State court without a waiver of their right of removal under present law (Markantonatos v. Maryland Drydock Company, (1953) 110 F. Supp. 862), but this action under prior law was in some cases held to be a waiver of the right to removal. However, the right of removal is decided by the Federal court from the pleadings and defendants' answer is not a necessary pleading for this purpose.

It appears counsel for defendants were reasonably justified in assuming that they had 20 days after service of the complaint to take some affirmative action. If they chose to seek removal then it seems they were reasonably justified in assuming that the stay of all State court proceedings set forth in subsection (e) above quoted, would relieve them of filing an answer in the State court until the jurisdictional question was decided, because, if the case was not remanded, they would never have to file an answer in the State court. To deny defendants an election within the 20 day period would in the event the case is not remanded require defendants to perform an arduous, vain task of filing an answer in the State court.

This same reasoning applies to the three defendants not petitioning for removal, because if a case is removed the entire suit goes into the Federal court.

In Texas Employers Insurance Association v. Felt (1945) 150 F. 2d 227, this question of removal of the entire controversy where the Federal court takes jurisdiction is reviewed at length and on pages 234 and 235, the court concludes, as follows:

"The economical and expeditious administration of justice often requires more than one controversy to be embraced in a single suit, regardless of the citizenship of the parties. Where one of such controversies would be removable to the federal court if separately brought in a state court, Congress has a reasonable range of legislative discretion to determine whether such suit,

in its entirety, shall be left in the state court, removed to the federal court, or split into two parts. We have seen that this discretion was first exercised for 77 years by leaving the entire suit in the state court; that from 1866 to 1875 the suit was split into two parts, one part being left in the state court and the other removed to the federal court; and that, since the act of 1875, the entire suit has been removable to the federal court.

"The reasons for granting, restricting, or withholdholding jurisdiction during the three periods mentioned were consideration for the practical judgment of Congress. That it was acting within the limits of its constitutional authority in granting to the lower federal courts both original and removal jurisdiction of controversies between citizens of different states is beyond question. The confusion, embarrassment, and increase in the cost of litigation, found to result from the act of 1866 were sufficient grounds to warrant the enactment of the act of 1875, providing for the removal of the whole suit, thereby expressly conferring upon the federal courts ancillary or incidental jurisdiction to hear and determine a controversy wholly between citizens of the same state.

"As a court of equity never does things by halves but disposes of the whole case, once its jurisdiction has attached, the federal court, on removal, may constitutionally dispose of the whole suit if it contains a separable controversy wholly between citizens of different states that can be fully determined as between them. This ancillary jurisdiction, under legislative grant, obtains by virtue of the relation of the local controversy to the controversy between citizens of different states; and the amount involved, the citizenship of the parties, and the federal or non-federal character of the issues presented are immaterial."

We here note in passing that generally defects in a

petition for removal or the bond filed therewith may be cured by amendment. Therefore, had the Federal court sustained plaintiffs' contentions in regard thereto, no doubt if any defects did appear they would have to be permitted to be rectified by amendment: Tucker v. Kerner, supra; Powers v. Chesapeake & Ohio Railroad Company, 169 U. S. 92. However, as stated before, since the Federal court has the duty of passing upon the procedural requirements and since the same evidently were approved by that court, we cannot review these matters and pass upon their sufficiency.

Therefore, it seems clear that upon the filing of the petition for removal and the bonds, removal was effected immediately under subsection (e), the jurisdiction of the State court absolutely ceased, that of the Federal court attached and all orders made thereafter in the State court are coram non judice and irregularly entered: National Steamship Company v. Tugman, 106 U. S. 118; Kern v. Huidekoper, 103 U. S. 485.

In Federal Practice and Procedure, Rules edited by Barron and Holtzoff, volume 1, p. 198, it is stated:

"Removal is effected by filing the petition and bond in the federal court, filing in the state court a copy of the petition and giving prompt written notice to all adverse parties. This notice and filing will ordinarily be contemporaneous with the filing in federal district court or as reasonably soon thereafter as is practicable. The federal rule of civil procedure governing the service of notices by mail or otherwise is inapplicable to the proceeding to remove the case to federal district court. No order for removal is necessary.

"After the removal of a case is effected, as above indicated, 'the State court shall proceed no further therein unless the case is remanded.' Any further proceedings in the state court are coram non judice and will be vacated."

Plaintiffs make considerable point that no prompt written notice was given to all adverse parties. The files, however, show that counsel for plaintiffs accepted service of the petition for removal and received a copy thereof on June 8, 1953. This in our opinion is sufficient compliance and formal written notice thereof must be considered waived upon acceptance of service.

Likewise, defendants did file answers in the Federal court and copies of those answers were mailed to or served upon plaintiffs' counsel prior to the entry of said judgments.

Returning to the principles set forth at the outset and keeping in mind that the power to strike off judgments entered by default should be liberally construed, that cases should be tried on their merits and every litigant have his day in court, that if defendants' counsel made a mistake it was a justifiable and an excusable one, that application was made promptly, one motion being filed before remand and the other within a few days after remand, that answers were in fact filed, though not complying with Pa. R. C. P. procedure, that a defense is set forth in said answers, and that substantial justice requires the granting of the motions as to all defendants, the court enters the following:

*Order*

And now, to wit, April 7, 1956, the rules heretofore granted on motion of defendants directing plaintiffs to show cause why the default judgments entered in the above captioned action should not be stricken from the record are hereby made absolute, and it is accordingly, adjudged and decreed that said default judgments are stricken from the record and defendants are allowed 20 days from the date of this order to file an answer to the complaint in accordance with the Pa. R. C. P. procedure.