**Brockway v. Brockway**

*Marc L. Marks*, for petitioner.
*Michael J. Wherry*, for respondent.

STRANAHAN, P. J., February 25, 1970.—This matter is before the court as the result of a rule to show cause why a support order entered at September term, 1959, no. 4, should not be vacated. The support order provided that Philip E. Brockway was to pay the sum of $284.96 per month for support of his wife, plus the right to reside on certain property with a rental value of $100 a month.

The court having conducted a hearing in this matter makes the following findings of fact:

## FINDINGS OF FACT

1. The parties in this case were husband and wife and have been separated for an extended period of time.

2. Petitioner, a former resident of Mercer County, went to North Carolina, and resided in that State for more than six months prior to the commencement of a divorce action against his wife.

3. The divorce action was filed in the North Carolina Court, and since the defendant-wife was not

available for personal service, service was made upon her by publication and by mailing a copy of the notice of the commencement of the action to defendant at her last known address. This was done in compliance with the North Carolina law, which permitted service of this type.

4. The publication of the notice was made in the Zebulon Record once a week for four successive weeks. While this is not established, it would appear from the information available to the court that the Zebulon Record is a newspaper which circulates primarily in Wake County, N. C. The service in the newspaper commenced on or about April 10, 1969, and continued through May 1, 1969.

5. On May 30, 1969, the wife-defendant entered a special appearance solely for the purpose of making a motion to quash the service of summons, and to dismiss the action for the reason that the court had not acquired jurisdiction over her person.

The reasons set forth in the motion were that defendant had not received a copy of the complaint, or a copy of the order for service by publication, or a copy of the affidavit by plaintiff-petitioner satisfying the requirements of the statute providing for service by publication, but that she had merely received a notice of service of process by publication, which she contends does not adequately inform her of the allegations against her and, therefore, does not constitute a valid form of service in that she is denied a service that complies with due process of law.

She further contends that publication in the Zebulon Record was not publication in a newspaper most likely to give defendant notice of the pending action, since the newspaper is far removed from any location with which defendant has had any contact. This form of service also denies her the required due process of law.

6. On June 5, 1969, the court refused the motion to dismiss.

7. On June 5, 1969, defendant took exceptions to the court's refusal to grant her motion to dismiss.

8. On June 15, 1969, defendant filed a notice of preservation of exceptions which apparently permits her to either take an immediate appeal from the court's denial of her motion to dismiss or to preserve her right to appeal for determination in conjunction with any subsequent appeal.

9. On July 3, 1969, defendant, without waiving her motion to dismiss for lack of jurisdiction, filed an answer to the complaint.

10. On September 22, 1969, the divorce case between petitioner and defendant was heard by a jury. At that time, both parties were represented by counsel. Interrogatories were submitted to the jury, all of which were answered in the affirmative. These interrogatories would indicate that the jury determined that plaintiff had been a resident of North Carolina for more than six months, and that he and defendant were married, and that plaintiff and defendant had lived separate and apart from each other continuously for more than one year next preceding the institution of this action.

11. In conjunction with the interrogatories that were answered by the jury, the judge entered an order on September 24, 1969, finding as a fact that defendant had been properly served, and that she had filed an answer in this matter and had been represented by counsel at the time of trial. The court entered a decree that the bonds of matrimony be dissolved.

## DISCUSSION OF FACTS AND LAW

The proceeding in the Pennsylvania courts results from a petition for a rule to show cause why the support order for the wife should not be terminated for

the reason that the parties are now divorced and under Pennsylvania law the husband has no further obligation to support his wife.

Defendant contends that the Pennsylvania court is not bound by the North Carolina divorce for the reason that North Carolina did not obtain jurisdiction over defendant, since she was not adequately and properly served by publication. Such being the case, defendant reasons that the North Carolina divorce is null and void in the State of Pennsylvania, and that this court should continue its support order.

In Commonwealth ex rel. Grill v. Grill, 162 Pa. Superior Ct. 244, the factual situation was somewhat similar to the present case in that the matter before the court arose out of a support proceeding. In that particular case the husband had obtained a divorce in Alabama, and the wife had entered a special appearance for the purpose of contesting jurisdiction of the Alabama courts for the reason that the husband was alleged by her not to be domiciled in Alabama. The Alabama court ruled that Alabama did have jurisdiction for the reason that the husband was domiciled in the State of Alabama. At the time of the proceedings in Pennsylvania, which were brought by the husband to dismiss a support order against him, the wife again raised the defense that Alabama had no jurisdiction because her husband had not been domiciled in that State at the time of the divorce proceedings.

On page 246, the court states:

"While her appearance specially to plead in abatement did not bring her into court as on a general appearance, or bind her by the final judgment and decree in divorce, she was, however, precluded from relitigating the single question which she had prayed the Alabama Court to decide, to wit, whether David J.

Grill was a bona fide resident of Alabama at the time
when he filed the divorce proceeding."

The wife having elected to litigate this in the State
of Alabama, she was precluded from again raising
the same defense in Pennsylvania.

In the present case, the wife appeared specially in
North Carolina for the purpose of moving the court
to quash the service of summons and dismiss the action
in divorce because the North Carolina court had not
acquired jurisdiction over the person of the wife-
defendant. The grounds alleged were two, the first
being that she had not received sufficient informa-
tion by mail to inform her of the allegations against
her, and, therefore, she was denied due process of law.
The second contention was that publication in the
Zebulon Record, a newspaper, once a week for four
successive weeks was not calculated to give defendant
notice of the pending action and was not publication
in a newspaper most likely to give defendant notice of
the pending action. It is further contended that this
publication is a paper far removed from any location
with which defendant has ever had any contact, and
it does not constitute service sufficient to give the
wife-defendant due process of law. This defense is a
unique and unusual one, but the fact remains that
the North Carolina court dismissed the motion, ruling
that it had no merit.

From this order dismissing the motion, the wife-
defendant took exceptions and apparently preserved
her right of appeal. Having commenced that litiga-
tion in North Carolina, the wife-defendant must pur-
sue it, and if the ruling of the lower court was un-
favorable to her, she, of course, has the right to appeal
it to the appellate courts of North Carolina.

Applying the rule of Commonwealth ex rel. Grill
v. Grill, supra, she cannot relitigate this matter in

the Pennsylvania courts.

There is another reason that should be considered by the court in answer to defendant's argument. Defendant relies primarily on the case of Harrison v. Hanvey, 265 N. C. 243, 143 S. E. 2d 593. This case holds that "due process requires that notice required for service of process by publication be published in a newspaper most likely to give notice to defendant."

The same rule of law appears in the case of Mullane v. Central Hanover Bank & Trust Company, 339 U. S. 306, 70 S. Ct. 652, 94 L. Ed. 865. Accepting this as a correct principle of law, it is difficult in this case to understand its applicability. In the cases above cited, the parties were dealing with a question of whether a judgment could be opened because the person against whom the judgment was entered had not received notice of the suit against him. Under those circumstances, the question of whether the party against whom the judgment was entered received sufficient notice was a vital question.

In the present case, the factual situation is entirely different in that Mrs. Brockway does not at any time contend that she did not receive notice of the divorce proceeding, nor does she contend that notice was so late in arriving that she was denied the opportunity to appear at any hearing and properly defend her position.

In Nixon v. Nixon, 329 Pa. 256, at 266, the court states:

"Here, not only was there due process as to the original proceeding, but respondent actually knew of the subsequent proceedings all along and had in her possession at all time the matters she delayed submitting to the court. Even if the evidence would have balanced the scales it was highly inequitable to

allow her to sit by while her husband made out a valid case for divorce, and then after a decree had been entered, time elapsed, and her divorced husband re-married, to permit a reexamination of matters already determined by the court and essential to its decree."

It would appear to this court that the wife cannot argue that she was denied due process when the record clearly indicates that she was aware at all stages of the proceeding as to what was going on, and at no time was she denied the opportunity to appear and defend herself.

### CONCLUSIONS OF LAW

1. It is, therefore, the opinion of this court that the wife cannot relitigate a question at this time that she has already litigated, and that there was no denial of due process here, since the wife had notice and an opportunity to be heard.

2. An examination of the exemplification of the record which was offered in evidence in this case would indicate that the court of North Carolina has granted to Mr. Brockway a divorce, and, such being the case, the court of this jurisdiction must terminate the support order against Mr. Brockway and in favor of his wife.

### DECREE NISI

And now, February 25, 1970, the court enters the following decree nisi and does order that the support order at September term, 1959, no. 4, is hereby ter-minated, and it is further ordered that if no exceptions are filed to this decree nisi within 20 days, it shall be entered as of course by the prothonotary as a final decree. Upon entry of the final decree, it is directed that the prothonotary shall give prompt notice to counsel of record representing the parties.