Re: Vacation of Portion of Dorney Park Road (Formerly L.R. 39028) From the Road System of South Whitehall Township. George Whitner and Jane Smith, Appellants.

Argued November 16, 1981, before Judges Williams, Jr., MacPhail and Palladino, sitting as a panel of three. Reargued June 8, 1982, before President

Judge CRUMLISH, JR. and Judges ROGERS, BLATT, WILLIAMS, JR., CRAIG, MACPHAIL and DOYLE.

*Wilbur C. Creveling, Jr.,* for appellants.

*Thomas P. Monteverde,* with him *E. Keller Kline, III,* for appellee, Dorney Park Coaster Company.

*Blake C. Marles,* with him *James L. Heidecker, Jr., Butz, Hudders and Tallman,* for appellee, South Whitehall Township.

OPINION BY JUDGE WILLIAMS, JR., August 11, 1982:

The genesis of this case was a municipal decision to vacate a portion of a certain public road in South Whitehall Township, Lehigh County. The appellants herein, Jane Smith and George Whitner, undertook to challenge the vacation; but they failed to pursue their statutory remedies within the time period fixed by law. When Smith and Whitner sought leave to pursue the remedies *nunc pro tunc,* the Court of Common Pleas of Lehigh County denied their application. From that order the instant appeal followed.

South Whitehall Township is a township of the first class, and has within it a public highway named

Dorney Park Road (Road). The Road extends in length approximately 1.7 miles; and has a legal right-of-way 33 feet wide.[1] The Road was formerly part of the state road system, but was abandoned as such and became a township road.

A portion of Dorney Park Road, about 770 feet of it, bisects an amusement complex called Dorney Park, which is owned by the Dorney Park Coaster Company (Company). The Company petitioned to have that part of the Road vacated.

In early 1977 the Board of Commissioners of South Whitehall Township (Commissioners), pursuant to the Company's petition, advertised a public meeting to consider the vacation of that part of the Road which abutted the Company's land. A public meeting was held in March of 1977; and witnesses for the Company and members of the public gave testimony for and against the proposed vacation.[2]

The Commissioners held another public meeting in May 1977, at which time they accepted the recommendation of the township engineer that the Road portion in question be vacated. In June 1977 Jane Smith, together with other objectors, filed an action in equity seeking to bar the vacation of the Road; that suit, however, was dismissed.

On January 8, 1979, almost two years after the last public meeting about the Road, the Commissioners held another public meeting, at which they enacted an ordinance to vacate the portion of the Road that abutted the Company's land. By a written document also dated January 8, 1979, the Commissioners entered into

---

[1] It appears that the actual cartway is narrower.

[2] The Road portion to be vacated was abutted only by the Company's land. However, some of the opponents had residences on other portions of the Road, and objected to losing the Road as a complete throughway.

an agreement with the Company, setting forth the terms and conditions for the vacation of the Road portion in question.

In February 1979, objectors Jane Smith and George Whitner engaged attorney James F. Diefenderfer to represent them in mounting a legal challenge to the vacation of the Road. Attorney Diefenderfer advised his clients that, pursuant to The First Class Township Code,[3] they had to file challenges to the Commissioners' "report," and that the challenges had to be filed within 30 days of the date the Commissioners filed their report with the Clerk of Court.

Diefenderfer immediately inquired of the Clerk of Court if the Commissioners had filed their report concerning the Road, but learned that as of February 26, 1979, the report had not been filed. The attorney then requested the Clerk of Court to inform him when the report was filed; and the Clerk stated that he would do so. However, it appears from the record in this case that Mr. Diefenderfer never asked the Commissioners or the township's solicitor to give him notice of when the report was to be filed.

On March 9, 1979, the Commissioners filed their report with the Clerk of Court. The Clerk, however, failed to advise Diefenderfer of the filing. Moreover, there was no public advertisement or any other form of notice that the report had been filed.

According to attorney Diefenderfer, he did not learn until April 17, 1979 that the report had been filed. On April 20, 1979, the objectors petitioned the Court of Common Pleas of Lehigh County for leave to file their challenges *nunc pro tunc*. On April 17, 1980, that court denied the petition and thus induced the instant appeal.

---

[3] Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. §§55101 *et seq.*

Section 2005 of The First Class Township Code[4] empowers the Board of Commissioners of a first class township to take certain actions relative to township roads, including the vacation of any such road in whole or part. Section 2008 of the Code[5] provides that should a majority of the Commissioners, after hearing and consideration, decide favorably on the proposed road action, they must then prepare a report concerning the road and the action proposed. Section 2008 also requires that the Commissioners' report be filed with "the clerk of the court of quarter sessions." This report may be confirmed or rejected by the court. *See Marinclin Appeal,* 204 Pa. Superior Ct. 552, 205 A.2d 885 (1964). Additionally, the filing of the report triggers, for an objector, certain statutory remedies relative to the proposed road action.

Section 2009 of the Code provides as follows:

Any citizen or freeholder of the township may, *within thirty days after the filing of the report* of the board of commissioners, upon entering in the court sufficient surety to indemnify the board for all costs incurred in the proceedings, *file exceptions to the report, together with a petition for a review.* (Emphasis added.)[6]

In the case at bar, the Commissioners' report was filed on March 9, 1979. The objector-appellants concededly failed to post a bond or file exceptions and a

[4] 53 P.S. §57005.

[5] 53 P.S. §57008.

[6] 53 P.S. §57009. The term "petition for *a* review" contained in this Section does not refer to a petition for review in the standard appellate sense. The meaning of the term relates to the fact that, in road proceedings of the type here in issue, the township Board of Commissioners performs the function of a board of viewers. Thus, the term "petition for *a* review" means a petition for a second "view," or a "re-view."

petition for a review within the 30 days required by Section 2009. Instead, 11 days after the statutory period had expired, the objectors sought leave to pursue their remedies *nunc pro tunc.* The basis for that application, and the key to the objectors' position in this appeal, is that they were never given notice by any municipal or court officer that the report had been filed.

It is well settled in our law that where a statute fixes the time within which an appeal may be taken, courts have no power to extend the time absent a showing of fraud, or a breakdown in the court's operation through a default of its officers whereby a party is prejudiced. *Nixon v. Nixon,* 329 Pa. 256, 198 A. 154 (1938); *Delmont Borough Annexation Case,* 2 Pa. Commonwealth Ct. 496, 276 A.2d 549 (1971).

In the view of the court below, the objectors' rights under Section 2009 are analogous to an appeal. In denying the objectors' petition for leave to proceed *nunc pro tunc,* the lower court observed that neither Section 2009 nor any other provision of The First Class Township Code expressly requires that notice be given of the filing of the Commissioners' report. As an additional matter, the court found that there was no showing of a local, court "custom" which would have obligated the Clerk of Court to notify the objectors' counsel that the report had been filed. Based on this reasoning, the lower court concluded that there was no fraud or breakdown in court operations as would permit extending the appeal period beyond the 30 days prescribed by Section 2009.

We agree with the lower court, that there is no express requirement in the Code for the giving of notice that a Commissioners' report has been filed with the Clerk of Court. We do not agree, however, that it was the intendment of the legislature to withhold a notice requirement.

It is to be noted that, under Section 2009 of the Code, any citizen or freeholder of a first class township has the right, upon posting a bond, to file exceptions to the Commissioners' report, together with a "petition for a review." The limitation on this right is that it be exercised within 30 days after the filing of the Commissioners' report. Thus, the right is one that arises upon the filing of the report, and has a longevity measured from the date the report is filed. It must follow, therefore, that unless there is some kind of reasonable official notice that a report has been filed with the Clerk of Court, exercise of the appeal right conferred by Section 2009 will be severely impeded if not nullified.

Recently, in the case of *Schmidt v. Commonwealth*, 495 Pa. 238, 433 A.2d 456 (1981), our state Supreme Court addressed a notice problem closely related to the one now before us. In *Schmidt* the Board of Finance and Revenue dismissed, as untimely, an appeal from a tax reassessment decision of the state Department of Revenue. The statute in question conferred a right to appeal such a decision to the Board of Finance and Revenue within 60 days after *the date the Department mailed,* to the taxpayer, notice of its reassessment decision. The Department, on March 21, 1978, mailed its decision to the taxpayer; but the accompanying letter of transmittal bore no date. On May 23, 1978, the taxpayer filed his appeal with the Board. That appeal was dismissed for exceeding the 60-day period allowed by the statute.

In *Schmidt* the Supreme Court reversed the dismissal because the Department had not supplied the taxpayer with the *date* the tax decision was mailed; that is, the taxpayer had not been notified of the date of the event that commenced the running of the allowable appeal period. After pointing out that it was reasonable for the legislature to make the 60-day ap-

peal period commence with the date of mailing, the Supreme Court made the following further statement:

Implicit, however, is the duty of the Department to advise the taxpayer of the date of mailing. Without such notification, a taxpayer can have no reliable basis for knowing the number of days remaining in which to file a petition for review.

*Id.* at 241, 433 A.2d at 458.

After observing that knowledge of the mailing date was essential to a taxpayer, the Court in *Schmidt* concluded by holding that the legislature could only have contemplated that the Department would furnish the information that was crucial to the functioning of the statutory appeal procedure.[7]

It is our conclusion that the reasoning of the *Schmidt* decision applies to the case at bar. Since qualified objectors to a road vacation or any other road action must perfect their Section 2009 rights within 30 days after the filing of the Commissioners' report, timely knowledge of that filing is crucial to the exercise of the appeal procedure set forth in Section 2009. Without such knowledge a qualified objector would have no way of realizing that the allowable appeal period had commenced. Of course an objector or his counsel could make periodic trips to the county courthouse, or solicit the information from some township officer, or depend upon word from some particular court employee. However, such an approach hardly seems an adequate, systematic, and orderly substitute for reasonably prompt official notice, initiated by the Commissioners themselves, that their report has been filed with the Clerk of Court. In our view, implicit in Section 2009 of The First Class Town-

---

[7] *See also Hanna v. Zoning Board of Adjustment of Pittsburgh*, 62 Pa. Commonwealth Ct. 620, 437 A.2d 115 (1981).

ship Code is a duty on the part of the Commissioners to issue such notice.

We do not suggest that the Commissioners must send personal notice of the filing to every "citizen and freeholder of the township." But, we can ascertain no reason why the Commissioners cannot advertise, in an appropriate publication, the fact that the report has been filed. We recognize that such published notice would be far from perfect; yet, such an effort would be better than no notice at all.

Because the objector-appellants in the instant case were never given timely official notice that the Commissioners had filed their report, the objectors' petition to proceed *nunc pro tunc* should have been granted; subject, of course, to the duty to post a bond. We, therefore, must reverse the order of the lower court and remand the case with a direction to proceed accordingly.

### ORDER

AND Now, the 11th day of August, 1982, the order of the Court of Common Pleas of Lehigh County, dated April 17, 1980, at No. 4-R-79, is hereby reversed. It is further ordered that this case be remanded to the said court to allow the appellants herein leave to proceed *nunc pro tunc* under the provisions of Section 2009 of The First Class Township Code, 53 P.S. §57009, subject to compliance with the bond requirement set forth in that Section.

President Judge CRUMLISH, JR. concurs in the result only.

---

DISSENTING OPINION BY JUDGE MACPHAIL:

I respectfully dissent. It is acknowledged by the parties and in the majority opinion that there is no prerequisite of notice to anybody in Section 2009 of the First Class Township Code that the report of the

Board of Commissioners has been filed. The majority opinion, nevertheless, engrafts upon the language in Section 2009 a requirement that notice must be given by the Board that its report has been filed before the time for filing exceptions commences. The majority opinion does not state how or to whom such notice is to be given but holds that the failure of the Board in this case to give some kind of notice to the present objectors, justifies the extension of the appeal period.

The legal authority for such an extension is said by the majority to be found in *Schmidt v. Commonwealth*, 495 Pa. 238, 433 A.2d 456 (1981). The principal difference between that case and the one now before us is that in *Schmidt* there *was* a notice requirement; here there is none. Our Supreme Court held in *Schmidt* that the failure of the Department of Revenue to set forth a mailing date in its *notice* of reassessment was a fatal defect. In the instant case, the Appellant's attorney knew that there would be no notice and he relied upon a Court officer to inform him when the report was filed. In *Schmidt*, the Court was construing a tax statute; the case before us involves the vacation of a road. Because of those substantial differences, I do not believe that *Schmidt* controls.

Here, the Board followed the terms of the statute pursuant to which it was acting. It was guilty of no wrong doing. The cause of the problem was understandable but hardly justifiable. Had the attorney checked the dockets daily or had he requested the township officials to notify him when the report was filed, the case would not be before us. The majority opinion now extends this already lengthy litigation process by validating an appeal which was admittedly untimely filed. I do not believe we have sufficient grounds to do so.

Aside from what I believe to be an erroneous result in the case before us, I am greatly concerned that the

precedent we now establish will open the door for the granting of untimely appeals for spurious reasons in the future.

I would affirm on the opinion of the trial judge.