IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Derry Street Pub, Inc. d/b/a The Cafe, :
               Petitioner      :
                             :
      v.                      : No. 332 C.D. 2021
                             : Submitted: October 29, 2021
Commonwealth of Pennsylvania, :
Department of Labor and Industry, :
Office of Unemployment :
Compensation Tax Services, :
               Respondent   :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                        FILED: April 12, 2022

Derry Street Pub, Inc. d/b/a The Cafe (Derry Street) petitions for review of the March 1, 2021 Order of the Department of Labor and Industry (Department), Office of Unemployment Compensation Tax Services (OUCTS), which dismissed Derry Street's Petition for Reassessment (Petition) as untimely under Section 304(b) of the Unemployment Compensation (UC) Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 784(b).[1] We affirm.

---

[1] Section 304(b) of the Law states:

> Any employer against whom an assessment is made may, within fifteen days after notice thereof, petition the [D]epartment for a re-assessment which petition shall be under oath and shall set forth therein specifically and in detail the grounds and reasons upon which it is claimed that the assessment is erroneous. Hearing or hearings on said petition shall be held by the [D]epartment at such places and at

**(Footnote continued on next page…)**

**Background**

On August 1, 2019, the Department mailed a Notice of Assessment (Notice) to Derry Street's last known mailing address of record: 2312 Derry Street, Harrisburg, Pennsylvania, 17104. The Notice informed Derry Street that the Department had assessed $22,608.91 in unemployment compensation (UC) contributions, interest, and/or penalties against it pursuant to Section 304(a)(1) of the Law, 43 P.S. § 784(a)(1).[2] The Notice also stated:

> If you disagree with this assessment, you may file a petition for reassessment WITHIN FIFTEEN (15) DAYS after the date of this notice. THIS ASSESSMENT WILL BECOME CONCLUSIVE AND BINDING UNLESS YOU FILE A TIMELY PETITION FOR REASSESSMENT.

Record (R.) Item No. 1, App. B (capitalization in original). The Notice stated that the last day to file a timely petition for reassessment was August 16, 2019. *Id.*

---

> such times as may be determined by rules and regulations of the [D]epartment and due notice of the time and place of such hearing given to such petitioner.

43 P.S. § 784(b).

[2] Section 304(a)(1) of the Law states:

> If any employer fails within the time prescribed by the [D]epartment to file any report necessary to enable the [D]epartment to determine the amount of any contribution owing by such employer, the [D]epartment may make an assessment of contributions against such employer of such amount of contributions for which the [D]epartment believes such employer to be liable, together with interest thereon as provided in this act.

43 P.S. § 784(a)(1).

On September 30, 2019, Derry Street, through its designated Power of Attorney, Elaine M. Davis,[3] filed its Petition and supporting documentary evidence. In its Petition, Derry Street asserted that although it had filed the Petition beyond the 15-day statutory deadline, its late filing was due to non-negligent circumstances beyond its control and/or an administrative breakdown. Specifically, Derry Street asserted that the executed Power of Attorney form, together with Ms. Davis's email communications with the Tax Agent in the weeks preceding the filing of the Petition, established that OUCTS incorrectly mailed the Notice to Derry Street rather than to Ms. Davis. Derry Street averred:

> [Ms. Davis] was in contact with the [Tax Agent] since June 20, 2019 in an effort to discuss the [OUCTS] audit and determine if an assessment had been filed. The [Tax Agent] responded that he would like to discuss the case, but was going on vacation and gave an approximate time for [Ms. Davis] to send him the Power of Attorney [form] and discuss the case. [Ms. Davis] did so repeatedly, both by e[]mail and telephone voicemails, but the [Tax Agent] did not respond. [Ms. Davis] has communicated in other cases with the [Tax Agent] and never had a problem with non-responsiveness. The e[]mails sent to the [Tax Agent] were not returned as undeliverable and [Ms. Davis] was receiving e[]mails from other clients without issue.

> . . . .

> . . . [Ms. Davis] made the [Tax Agent] duly aware on July 17, 2019 of her representation [of Derry Street], sent the Power of Attorney [form], and requested the status of the case. Had the [Tax Agent] responded or at least sent a copy of the [Notice] via e[]mail to [Ms. Davis], the appeal would have been timely filed.

R. Item No. 1.

---

[3] On July 17, 2019, Ms. Davis emailed to UC tax agent Brian Olimpi (Tax Agent) an executed Power of Attorney form, whereby Derry Street appointed Ms. Davis as its tax representative with the power and authority to act on its behalf. *See* R. Item No. 1, Apps. A & C.

On February 14, 2020, the Department notified the parties that the timeliness of Derry Street's Petition was at issue and directed them to exchange exhibits by May 22, 2020.

On February 28, 2020, OUCTS filed a Motion to Dismiss the Petition (Motion to Dismiss), asserting that the Petition was untimely. Derry Street filed a response to the Motion to Dismiss on March 13, 2020. The Department stayed the parties' exhibit exchange until resolution of the Motion to Dismiss.

On March 1, 2021, the Department granted the Motion to Dismiss, concluding that Derry Street failed to justify its untimely filing. The Department concluded:

> [Derry Street] represents [that] the delay between OUCTS mailing the [Notice] to [Derry Street] and [Ms. Davis] receiving the [Notice] was due to several factors, including that [Derry Street's] owner "does not work or reside at the Derry Street Pub" and "was out of the country[,] immediately followed by [Ms. Davis's] vacation the second full week of August until August 16, 2019." [Derry Street] expresses that once it did receive the [Notice], it was unable to successfully send it to [Ms. Davis] through e[]mail and then waited until the conclusion of [her] vacation to provide the [Notice] to her.
>
> . . . .
>
> Misleading information provided by an agency staff member regarding appeal filing requirements may constitute an administrative breakdown and warrant nunc pro tunc treatment for the appeal belatedly filed based on such inaccurate information; however, *we find the [UC Tax Agent's] comments to Ms. Davis fall short of establishing misleading or fraudulent conduct by OUCTS or a breakdown in agency operations [that] prevented [Derry Street] from filing a timely appeal*, for the following reasons.
>
> [The Tax Agent] communicated, by e[]mail dated June 21, 2019, that he would talk to [Ms. Davis] "in July," and also notified [her] that an assessment would[ not] be generated "until the middle of July." [The Tax Agent's] failure to contact [Ms. Davis] in July should have alerted

4

[Ms. Davis] not to rely on a response from [the Tax Agent] prior to the issuance of an assessment. [Ms. Davis] was already notified that an assessment would be issued, and that [Derry Street] could expect [it] at some point after mid-July. The [Notice] was issued August 1, 2019, which is after the time period indicated. Additionally, [Derry Street's owner's] vacation and [his] subsequent technical difficulties in forwarding the [Notice] to [Ms. Davis] are not compelling reasons to be late.

Dep't Order, 3/1/21, at 4-6 (footnotes omitted) (emphasis added). Therefore, the Department dismissed the Petition as untimely. Derry Street now petitions this Court for review.[4]

## Analysis

On appeal, Derry Street asserts that the Department erred in dismissing its Petition because OUCTS failed to mail the Notice to Ms. Davis, despite its knowledge of her representation of Derry Street. Derry Street also argues that the Tax Agent misled Ms. Davis regarding the issuance of the Notice, which amounted to an administrative breakdown. We disagree with both contentions.

Section 304 of the Law sets forth the procedures governing UC tax assessments and the time period for challenging an assessment. Section 304(a)(3) of the Law provides that "[t]he [D]epartment will mail notice of an assessment to the *employer's last known address*" and that "[n]otice of an assessment by mail is *complete upon mailing*." 43 P.S. § 784(a)(3) (emphasis added). Section 304(b) of the Law provides that "[a]ny employer against whom an assessment is made may, within fifteen days after notice thereof, petition the [D]epartment for a reassessment . . . ." 43 P.S. § 784(b).

---

[4] Our review is limited to determining whether the necessary factual findings are supported by substantial evidence, whether the Department committed an error of law, or whether the petitioner's constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

5

Here, Derry Street does not dispute that its last known mailing address is Derry Street Pub, Inc., The Cafe, 2312 Derry Street, Harrisburg, Pennsylvania, 17104, nor does it dispute that OUCTS sent the Notice via first-class mail to that address on August 1, 2019. It is also undisputed that the Notice was not returned to OUCTS as undeliverable. Therefore, OUCTS satisfied the notice requirement of Section 304(a)(3) of the Law by mailing the Notice to Derry Street's last known mailing address on August 1, 2019.

Derry Street did not file its Petition until September 30, 2019, 45 days beyond the 15-day deadline for seeking reassessment under Section 304(b) of the Law. Derry Street asserts, however, that it has established circumstances warranting *nunc pro tunc* consideration of its untimely Petition.

Our Court has explained:

> Limited circumstances exist in which an untimely [petition for reassessment] may be considered. *Nunc pro tunc* relief is a form of equitable relief that is available only "in certain extraordinary circumstances." Allowable exceptions include cases involving fraud, a breakdown in the administrative process, or when there is a "non-negligent failure to file a timely appeal which was corrected within a very short time, during which any prejudice to the other side of the controversy would necessarily be minimal."

*Best Courier v. Dep't of Lab. & Indus., Off. of Unemployment Comp. Tax Servs.*, 220 A.3d 696, 700 (Pa. Cmwlth. 2019) (internal citations omitted); *see also FREMCO Assocs., LLC v. Dep't of Revenue of PA Unemployment Comp. Audit Div.*, 257 A.3d 794, 803 (Pa. Cmwlth. 2021) (recognizing that "the equitable principles of the *nunc pro tunc* doctrine may be applicable [to an untimely petition for

reassessment] even though the word 'appeal' does not appear in Section 3[04](b) of the Law").[5]

Derry Street first seeks to invoke the exception for non-negligent circumstances, asserting that OUCTS incorrectly mailed the Notice to Derry Street rather than to Ms. Davis pursuant to the executed Power of Attorney form. The record belies this claim.

Derry Street, through its owner, Sukhvinder Longia, executed a Power of Attorney form on July 17, 2019. The Power of Attorney form appointed Ms. Davis as Derry Street's attorney-in-fact and gave her the power and authority to act on its behalf in matters before OUCTS.[6] In completing the form, Mr. Longia checked the box next to paragraph 1, which expressly authorized Ms. Davis to represent Derry Street "in any matter(s) relating to [its] liability for [UC] contributions." R. Item No. 1, App. A. However, Mr. Longia *did not* check the box next to paragraph 1(A), which stated:

---

[5] In *FREMCO*, this Court recently held that the 15-day deadline in Section 304(b) of the Law is a non-jurisdictional time limitation that "cannot be presumed" to deprive the Department of jurisdiction over an untimely petition for reassessment. 257 A.3d at 801. We observed that Section 304(b) uses the directory phrase "may petition," not the mandatory phrase "shall be filed," and does not state the consequence of filing a petition beyond the 15-day period. *Id.* at 802-03. We also noted that "precedent demonstrates that the Department has treated the statutory time constraint in Section 304(b) of the Law as a statute of limitations and not a jurisdictional bar." *Id.* at 803. Nonetheless, this Court held that "[w]hether the Department should allow [an untimely] petition for re[]assessment to proceed, given this statutory deadline, is a matter for the Secretary of [the Department] to decide." *Id.* at 801. In that instance, "the equitable principles of the *nunc pro tunc doctrine* may be applicable even though the word 'appeal' does not appear in Section 3[04](b) of the Law." *Id.* Here, the Department's Executive Deputy Secretary applied these equitable principles and determined, based on his review of the record, that Derry Street failed to establish its entitlement to *nunc pro tunc* relief. *See* Dep't Order, 3/1/21, at 6-7.

[6] The Department's regulations permit an employer to "appoint an agent with full or limited power and authority to act on its behalf with the Department." 34 Pa. Code § 63.66(a).

7

Also, I authorize [OUCTS] to *change my mailing address in its records to the address of said attorney-in-fact*. (This will result in mailings of quarterly UC tax returns, tax rate notices, and *miscellaneous tax notices, including deficiency notices, to be sent to the attorney-in-fact*.)

*Id.* (emphasis added). By not checking the box next to paragraph 1(A), Derry Street *declined* to authorize OUCTS to mail notices directly to Ms. Davis rather than to Derry Street's mailing address of record. Indeed, Derry Street acknowledges that, when preparing power of attorney forms, Ms. Davis "never selects the option for OUCTS to mail correspondence to her" because "the amount of mail would be overwhelming if she were to select the box to receive [her] clients' mailings." Derry Street Br. at 7-8; *see* R. Item No. 7.

Here, OUCTS mailed the Notice to Derry Street's last known mailing address of record – 2312 Derry Street, Harrisburg, Pennsylvania, 17104 – as required by Section 304(a)(3) of the Law and as directed by the executed Power of Attorney form. Contrary to Derry Street's contention on appeal, the fact that its owner neither works or resides at that address is irrelevant. Therefore, we conclude that OUCTS properly mailed the Notice to Derry Street's last known mailing address rather than to Ms. Davis.

Next, Derry Street asserts that its delay in filing the Petition was caused by the Tax Agent's misrepresentations regarding the status of the assessment and his failure to respond to Ms. Davis's emails and telephone calls, which amounted to an administrative breakdown. Derry Street contends that after being notified of Ms. Davis's representation of Derry Street, the Tax Agent did not respond to any of her emails or telephone calls after June 21, 2019, and Ms. Davis was erroneously led to believe she would hear from the Tax Agent before an assessment was issued.

To establish an administrative breakdown, Derry Street must demonstrate that OUCTS "'engaged in fraudulent behavior or manifestly wrongful or negligent

8

conduct' or that 'non-negligent conduct beyond [Derry Street's] control caused the delay.'" *Lopresti v. Unemployment Comp. Bd. of Rev.*, 55 A.3d 561, 563 (Pa. Cmwlth. 2012) (citation omitted). A breakdown in the administrative process occurs when "an administrative body acts negligently, improperly or in a misleading way." *Union Elec. Corp. v. Bd. of Prop. Assessment, Appeals & Rev.*, 746 A.2d 581, 584 (Pa. 2000).

The record shows that on June 20, 2019, Ms. Davis sent an email to the Tax Agent inquiring about the status of Derry's Street's audit. The Tax Agent replied on June 21, 2019, stating:

> No assessment has been generated yet and *it won't be until the middle of July* because I'm going to be in Ireland for 9 days and then Italy for another 9 [days] *so you have till about July 15th*. I don't have a lot of time to discuss it right now because I have some things to wrap up before I go[,] but here are the basic issues in a nutshell[] . . . .
>
> . . . .
>
> . . . If you do take the case let me know and *I'll talk to you in July*.

R. Item No. 1, App. C (emphasis added).

Ms. Davis emailed the Tax Agent again on July 17, 2019 and attached a copy of the executed Power of Attorney form. In that email, Ms. Davis informed the Tax Agent that she had met with Derry Street's owner, Mr. Longia, and was "taking the case." *Id.* Ms. Davis further stated: "Before you issue the assessment, *unless you have already*, I'd like to talk to you about the case, *if you're willing*." *Id.* (emphasis added). The Tax Agent did not respond to this email. Subsequent to this email, Ms. Davis called the Tax Agent and left him a voicemail message, but he did not return her call.

9

Based on our review of the record, we cannot conclude that the Tax Agent fraudulently or negligently misled Ms. Davis with regard to the issuance of the Notice. The Tax Agent stated on June 21, 2019, that he was leaving soon for vacation, that he would talk to Ms. Davis "in July," and that an assessment would not be issued "until the middle of July." R. Item No. 1, App. B. In its appellate brief, Derry Street claims that, based on the Tax Agent's June 21, 2019 email, Ms. "Davis was led to believe that the [Tax Agent] would discuss the audit status and apprise her when any assessment would be filed." Derry Street Br. at 8. However, Ms. Davis's July 17, 2019 email to the Tax Agent demonstrates that she understood that the Notice might have already been issued, without such a prior discussion. *See* R. Item No. 1, App. C ("Before you issue the assessment, *unless you have already*, I'd like to talk to you about the case, *if you're willing*.") (emphasis added). We agree with the Department that the Tax Agent's "failure to contact [Ms. Davis] in July should have alerted [Ms. Davis] not to rely on a response from [the Tax Agent] prior to the issuance of an assessment." Dep't Order, 3/1/21, at 6. Therefore, we conclude that Derry Street failed to establish that the Tax Agent fraudulently or negligently misled Ms. Davis.

Moreover, Derry Street offers no explanation as to why it did not monitor its mail at its business address after being notified that an assessment notice was forthcoming as early as mid-July. The record shows that on August 8, 2019 (one week after the Notice was mailed and within the 15-day petition deadline), Ms. Davis emailed Mr. Longia, informing him: "I anticipate hearing something soon. Hopefully, we can resolve this without having to appeal an assessment." R. Item No. 1, App. D (emphasis added). Importantly, this email included Ms. Davis's July 17, 2019 email to the Tax Agent, wherein she stated, "Before you issue the

10

assessment, *unless you have already*, I'd like to talk about the case, if you're willing." *Id.* (emphasis added). As such, Mr. Longia was aware, as of August 8, 2019, that the Notice may have already been mailed or would be mailed soon, yet he failed to either check the mail at Derry Street's business address or arrange for someone else to do so. In fact, in its appellate brief, Derry Street admits that Mr. Longia did not check Derry Street's mail for the Notice until weeks later, after he returned from vacation:

> It was not until [Mr. Longia] returned from vacation abroad and [Ms.] Davis made additional inquiries . . . in the absence of communication from the [Tax Agent] that [Derry Street] discovered that there could be a problem. [Mr. Longia], who neither lived nor worked at the address to which the [Notice] was sent, immediately attempted to locate any mail received by the Derry Street Pub d/b/a The Cafe, and finally discovered the [Notice,] which [he] forwarded to [Ms.] Davis.

Derry Street Br. at 17; *see also* R. Item No. 1, App. E (wherein Ms. Davis stated in a September 19, 2019 email to the Tax Agent: "I was on vacation last week and the Friday before that, [and I] got a call from Mr. Longia that he received something and was either going to fax or scan/e[]mail it to me. He said his son did so, but I didn't get anything.").

This Court has "consistently found [UC] petitioners negligent [for] not making other arrangements for their mail while they were away." *Best Courier*, 220 A.3d at 701 (citing cases). When a UC petitioner fails to monitor his or her mail, the petitioner "assume[s] the risk that time-sensitive matters would be received during th[o]se periods of absence." *Id.* at 702.

In this case, Ms. Davis was notified that Derry Street could expect to receive an assessment notice as early as mid-July. On August 1, 2019, the Department mailed the Notice to Derry Street's last known mailing address – 2312 Derry Street,

11

Harrisburg, Pennsylvania, 17104 – as required by Section 304(a)(3) of the Law and as directed by the Power of Attorney form. *See* R. Item No. 1, App. A. Once placed on notice that an assessment was forthcoming, it was Derry Street's responsibility to ensure that the mail at that address was being monitored during the relevant time frame. *See Best Courier*, 220 A.3d at 701 ("[The employer] acknowledges . . . that its office [to which the assessment notice was mailed] is not staffed on a daily basis; yet it did nothing to ensure mail was received in a timely manner. We have refused to allow *nunc pro tunc* relief under similar circumstances in the past."). As the Department properly determined, Ms. Davis's and Mr. Longia's vacations and Mr. Longia's "subsequent technical difficulties in forwarding the [Notice] to [Ms. Davis] are not compelling reasons to be late." Dep't Order, 3/1/21, at 6. Therefore, we conclude that Derry Street's delay in filing the Petition was the result of its own negligence.

### Conclusion

Accordingly, because Derry Street failed to satisfy its burden of proving that it is entitled to *nunc pro tunc* relief, we affirm the Department's Order.

_____
ELLEN CEISLER, Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Derry Street Pub, Inc. d/b/a The Cafe, :
                Petitioner       :
                                  :
       v.                    :  No. 332 C.D. 2021
                                    :
Commonwealth of Pennsylvania,  :
Department of Labor and Industry,  :
Office of Unemployment         :
Compensation Tax Services,      :
                Respondent    :

# **O R D E R**

AND NOW, this 12th day of April, 2022, we hereby AFFIRM the March 1, 2021 Order of the Department of Labor and Industry, Office of Unemployment Compensation Tax Services.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Derry Street Pub, Inc.          :
d/b/a The Cafe,             :
          Petitioner      :
                      :
         v.            :   No. 332 C.D. 2021
                      :   Submitted: October 29, 2021
Commonwealth of Pennsylvania,  :
Department of Labor and Industry,  :
Office of Unemployment      :
Compensation Tax Services,    :
          Respondent   :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE ELLEN CEISLER, Judge


***OPINION NOT REPORTED***

DISSENTING OPINION
BY JUDGE McCULLOUGH              FILED: April 12, 2022


       I respectfully dissent from the Majority's conclusion that the petition for reassessment (Petition) filed by Derry Street Pub, Inc. d/b/a The Cafe (Derry Street) was properly dismissed as untimely filed by the Department of Labor and Industry (Department), Office of Unemployment Compensation Tax Services (OUCTS). In my view, Derry Street—at the very least—is entitled to a hearing to determine whether it should be afforded *nunc pro tunc* relief.

       As alleged by Derry Street in its Petition, and as corroborated by attached documentary evidence, Derry Street's representative, Elaine M. Davis (Davis), received what she identified as "assessment documents" from the

Department that were dated June 11, 2019. Shortly thereafter, on June 20, 2019, Davis emailed a tax agent from the Department (Tax Agent) and, on the next day, the Tax Agent replied via email. In that correspondence, the Tax Agent informed Davis that "[n]o assessment has been generated yet and it won't be until the middle of July," and instructed Davis that "[if] you [*i.e.*, Davis] do take the case let me know and I'll talk to you in July." (Dismissal Order at 3.) Then, by email dated July 17, 2019, Davis advised the Tax Agent that she was taking the case, included a signed and notarized Pennsylvania Unemployment Compensation Power of Attorney Form UC-844 (Power of Attorney), and told the Tax Agent that, in the event an assessment had not yet been issued, she would "like to talk about the case." *Id.* Subsequently, the Tax Agent never responded to Davis, and, on August 1, 2019, OUCTS mailed an assessment (Assessment) to Derry Street, whose owner does not reside or work at Derry Street and was out of town during this time. Notably, Davis asserts that, in her prior dealings with tax agents from the Department, the tax agents had always mailed her copies of an assessment where, as here, a power of attorney had been filed. *Id.* at 3-6.

Based on these averments, Derry Street contends that its Power of Attorney, Davis, reasonably relied on the representations of the Tax Agent that he would discuss the case with her before the Assessment would be issued and the prior course of conduct undertaken by the Department's tax agents in mailing her an assessment. In essence, Derry Street maintains that the Department's misleading information and the failure of Davis to receive a copy of the Assessment constituted a breakdown in the administrative process that accounts for the delay in filing the Petition.

It is now well settled that an appeal *nunc pro tunc* may be allowed where the delay in filing the appeal was caused by extraordinary circumstances involving a breakdown in the administrative process. *Cook v. Unemployment Compensation Board of Review*, 671 A.2d 1130, 1131 (Pa. 1996); *see Russo v. Unemployment Compensation Board of Review*, 13 A.3d 1000, 1003 (Pa. Cmwlth. 2010). In cases where a claimant/petitioner is "unintentionally misled by an official who is authorized to act in the premises, the time [for appeal] may also be extended when it is possible to relieve an innocent party of injury consequent on such misleading act." *Flynn v. Unemployment Compensation Board of Review*, 159 A.2d 579 (Pa. Super. 1960); *see Stana v. Unemployment Compensation Board of Review*, 791 A.2d 1269, 1271 (Pa. Cmwlth. 2002). Further, "where an administrative body acts negligently, improperly or in a misleading way, an appeal *nunc pro tunc* may be warranted." *Union Electric Corporation v. Board of Property Assessment, Appeals & Review of Allegheny County*, 746 A.2d 581, 584 (Pa. 2000). As we have observed: "Inadequate notice is exactly the type of breakdown in the administrative process that satisfies the standard for a *nunc pro tunc* appeal." *Beaver County Children & Youth Services v. Department of Public Welfare*, 68 A.3d 44, 48 (Pa. Cmwlth. 2013).

Given the allegations as set forth above, which must be accepted as true at this stage of the proceedings, I find merit in Derry Street's argument that *nunc pro tunc* relief may be warranted. In sum, if credited by a fact-finder after a hearing, the evidence in support of the averments could effectively show that Davis was misled into believing that a Tax Agent would speak with her prior to the issuance of the Assessment and that Davis would, as part of the customary practice adopted by the Department's tax agents, personally receive the Assessment electronically or

through the mail. In substantially similar circumstances, this Court has found that a claimant/ petitioner is entitled to *nunc pro tunc* relief. For example, in *West Greene School District v. Unemployment Compensation Board of Review*, 535 A.2d 697 (Pa. Cmwlth. 1988), this Court determined that *nunc pro tunc* relief was suitable where the claimant "was mistakenly told by an [unemployment compensation] intake worker that the appeal could wait." *Id.* at 699. More importantly, in *Nixon v. Nixon*, 198 A. 154 (Pa. 1938), and *Purdy's Estate*, 291 A.2d 93 (Pa. 1972), our Supreme Court held that the failure of a court official to send notice of a court order to a party's attorney, where the mailing of such notice was an unofficial, but customary practice of the court office/prothonotary, evidenced a circumstance worthy of *nunc pro tunc* relief. *See Nixon*, 198 A. at 158 ("Despite the fact there is no statute or written rule of court requiring the prothonotary of the [court] to issue notices when orders have been entered, we understand that he has customarily assumed such a duty. . . . Under the circumstances [the attorney] [was] entitled to expect this notice. . . . [The] attorney[] was lulled into security by this practice, and his failure to receive such notice is sufficient reason for us to hold that [the] appellant should be permitted an appeal. To hold otherwise would work a grave injustice."); *accord Purdy's Estate*, 291 A.2d at 94.

Accordingly, for the above-stated reasons, I would vacate the order of the Department and remand with instructions that the Department convene a hearing as to whether Derry Street is entitled to *nunc pro tunc* relief and issue factual findings and conclusions of law with regard to that issue.[1]

---

[1] In reaching a contrary conclusion, the Majority places much weight on the fact that Derry Street's owner failed to check the box on the Power of Attorney Form that would have changed his address to the address of Davis, which, ultimately, would have resulted in "mailings of quarterly [Unemployment Compensation (UC)] tax returns, tax rate notices, and miscellaneous tax

**(Footnote continued on next page…)**

Hence, I respectfully dissent.



PATRICIA A. McCULLOUGH, Judge

---

notices, including deficiency notices, [being] sent to [Davis]." (Reproduced Record (R.R.) at 18a.) *See* Maj. slip op. at 7-8, 11-12. However, I do not see how this fact alters or otherwise undermines the fact that, if the evidence was found to be credible after a hearing, the Department could determine that Davis reasonably relied on the past practice of the Department's tax agents in mailing notices to a power of attorney who does not check this particular box, and that the failure of her to personally receive the Assessment, in and of itself, is sufficient to warrant *nunc pro tunc* relief. Moreover, as the Majority acknowledges, Davis "never selects the option for OUCTS to mail correspondence to her" because "the amount of mail would be overwhelming if she were [sic] to select the box to receive [her] clients' mailings." Maj. slip op. at 8 (internal citations omitted). Indeed, given the numerous filings that would be sent to a power of attorney if the box mentioned above was checked, I believe that an individual who simply signed the Power of Attorney form, vesting another individual "with full power and authority to represent [him/her] before, and act on [his/her] behalf . . . in any matter(s) relating to [his/her] liability for unemployment compensation contributions," R.R. at 18a, could reasonably believe that the power of attorney would receive all notices and assessments, especially in circumstances where, as here, the form was signed with regard to one specific case and/or assessment.